**UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)**

| | | |
|---|---|---|
| QUETEL CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:17-CV-00471 (AJT-JFA) |
| | ) | |
| HISHAM ABBAS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>JOINT SUBMISSION OF AGREED PROPOSED JURY INSTRUCTIONS</u>

COME NOW Plaintiff QueTel Corporation ("QueTel") and Defendants Hisham Abbas ("Abbas"), Shorouk Mansour ("Mansour") and finalcover, LLC ("finalcover" and, collectively with Abbas and Mansour, "Defendants"), and submit the following agreed proposed jury instructions, with and without citations.

DATE:  January 17, 2018

HISHAM ABBAS, SHOROUK
MANSOUR and FINALCOVER, LLC

By Counsel

/s/ J. Andrew Baxter
J. Andrew Baxter, Esq. (VSB No. 78275)
General Counsel, P.C.
6849 Old Dominion Drive, Suite 220
McLean, VA 22101
*Main*: 703-556-0411
*Cell:* 202-758-5778
*Fax*:  888-222-6807
*Email*: abaxter@gcpc.com
*Counsel for Defendants*

Respectfully submitted,

QUETEL CORPORATION

By Counsel

/s/ Patrick J. McDonald
Timothy J. McEvoy, Esq. (VSB No. 33277)
Matthew H. Sorensen, Esq. (VSB No. 65970)
Patrick J. McDonald, Esq. (VSB No. 80678)
CAMERON/MCEVOY PLLC
4100 Monument Corner Drive, Suite 420
Fairfax, Virginia 22030
703-273-8898 (Office)
703-273-8897 (Fax)
tmcevoy@cameronmcevoy.com
msorensen@cameronmcevoy.com
pmcdonald@cameronmcevoy.com
*Counsel for Plaintiff QueTel Corporation*

1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 17th day of January, 2018, I filed the foregoing using the Court's CM/ECF system, which will send notice of electronic filing through the Court's electronic filing system to all counsel of record.


/s/ Patrick J. McDonald
Patrick J. McDonald, Esq. (VSB No. 80678)
*Counsel for Plaintiff QueTel Corporation*

2

**AGREED PROPOSED JURY INSTRUCTIONS**

**WITH CITATIONS**

**AGREED INSTRUCTION NO. 1**
**Pre-Trial Instruction[1]**
**(To be read before opening statements)**

We are about to begin the trial of the case you heard about during the jury selection. Before the trial begins, I am going to give you instructions that will help you to understand what will be presented to you and how you should conduct yourself during the trial.

During the trial you will hear me use a few terms that you may not have heard before. Let me briefly explain some of the most common to you. The party who sues is called the plaintiff.  In this action, the plaintiff is QueTel Corporation.

The party or parties being sued are called the defendant or defendants. In this action, there are three defendants: Hisham Abbas, Shorouk Mansour, and finalcover, LLC, which may be referred to as "finalcover."

You will sometimes hear me refer to "counsel." "Counsel" is another way of saying "lawyer" or "attorney." I will sometimes refer to myself as the "Court."

When I "sustain" an objection, I am excluding evidence from this trial for a good reason. When I "overrule" an objection, I am permitting that evidence to be admitted.

When I say "admitted into evidence" or "received into evidence," I mean that a particular statement or exhibit may be considered by you in making the decisions you must make at the end of the case.

By your verdict, you will decide disputed issues of fact. I will decide all questions of law that arise during the trial. Before you begin your deliberation at the close of the case, I will instruct you in more detail on the law that you must follow and apply.

---

[1] 3 Fed. Jury Prac. & Instr. § 101:01 (6th ed.) (Modified).

Because you will be asked to decide the facts of this case, you should give careful attention to the testimony and evidence presented. Keep in mind that I will instruct you at the end of the trial about determining the credibility or "believability" of the witnesses. During the trial you should keep an open mind and should not form or express any opinion about the case until you have heard all of the testimony and evidence, the lawyer's closing arguments, and any instructions I give to you.

While the trial is in progress, you must not discuss the case in any manner among yourselves or with anyone else. In addition, you should not permit anyone to discuss the case in your presence. You should avoid any news articles that might be—or have been—published about this case or issues related to this case. You should also avoid watching or listening to any television or radio comments or comments on the internet about the trial or the issues discussed during the trial.

From time-to-time during the trial, I may make rulings on objections or motions made by the lawyers. It is a lawyer's duty to object when the other side offers testimony or other evidence the lawyer believes is not admissible. You should not be biased or partial against a lawyer or a lawyer's client because a lawyer has made objections. If I sustain or uphold an objection to a question that goes unanswered by the witness, you should not draw any inferences or conclusions from the question. You should not infer or conclude from any ruling or other comment I may make that I have any opinions on the merits of the case favoring one side or the other. I do not favor one side or the other.

The lawyers are not allowed to speak with you during this case. When you see the lawyers at a recess or pass them in the halls and they do not speak to you, they are not being rude or unfriendly; they are simply following the law.

During the trial, it may be necessary for me to talk with the lawyers out of your hearing about questions of law or procedure. Sometimes, you may be excused from the courtroom during these discussions. I will try to limit these interruptions as much as possible, but you should remember the importance of the matter you are here to determine and should be patient even though the case may seem to go slowly.

**AGREED INSTRUCTION NO. 2**
**Trial Process[2]**
**(To be read before opening statements)**

The case will proceed as follows:

*First*, the lawyers for each side may make opening statements. What is said in the opening statements is not evidence, but is simply an outline or summary to help you understand what each party expects the evidence to show.

After the opening statements, QueTel will present evidence in support of its claim and Defendants' lawyer may cross-examine the witnesses. At the conclusion of QueTel's case, the defendants, Mr. Abbas, Ms. Mansour, and finalcover, may introduce evidence and QueTel's lawyers may cross-examine the witnesses. Following the Defendants' case, QueTel may then present rebuttal evidence.

After the evidence is presented, the parties' lawyers make closing arguments explaining what they believe the evidence has shown. What is said in closing arguments is not evidence.

Finally, I will instruct you on the law that you are to apply in reaching your verdict. You will then decide the case.

---

[2] 3 Fed. Jury Prac. & Instr. § 101:02 (6th ed.) (Modified).

## AGREED INSTRUCTION NO. 3
### Consider Only Evidence Presented In Court[3]
### (To be read before opening statements)

As far as your own conduct during the trial, I must caution you that you are not to discuss this case either among yourselves or with anyone else during the trial.

You must not permit any third person to discuss the case in your presence, and if anyone does so, despite your telling them not to, you should report that fact to me. I understand that it is a normal human tendency to want to talk with people with whom one comes into contact; however, please do not, during the time you serve on this jury, speak, whether in or out of the courtroom, with any of the parties or their lawyers or any witnesses. By this I mean not only do not speak about the case but also do not speak at all even to pass the time of day. In no other way can all the parties be assured of the absolute impartiality they are entitled to expect from you as jurors.

It is important that this trial is treated seriously and that the jury maintain proper decorum in the courtroom. Please refrain from talking to each other while we are on the record. Please do not react with any comments or other audible response to any questions asked by counsel or answers given by the witnesses.

In fairness to the parties to this lawsuit, you should keep an open mind throughout the trial, reaching your conclusion only during your final deliberations after all the evidence is in and you have heard the attorneys' closing arguments and my instructions on the law. You will then be in a position to intelligently and fairly exchange your views with other jurors as you deliberate upon the verdict to be submitted by you.

---

[3] 3 Fed. Jury Prac. & Instr. § 101:12 (6th ed.) (Modified).

**AGREED INSTRUCTION NO. 4**
**Post-Evidence Introductory Instruction[4]**

Now that you have heard the evidence and the argument, it is my duty to instruct you about the applicable law. It is your duty to follow the law as I will state it. You must apply the law to the facts as you find them from the evidence in the case. Do not single out one instruction as stating the law, but consider the instructions as a whole. Do not be concerned about the wisdom of any rule of law stated by me.  You must follow and apply the law.

Nothing I say in these instructions indicates I have any opinion about the facts. You, not I, have the duty to determine the facts.

You must perform your duties as jurors without bias or prejudice to any party. The law does not permit you to be controlled by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all the evidence, follow the law, as it is now being given to you, and reach a just verdict, regardless of the consequences.

---

[4] 3 Fed. Jury Prac. & Instr. § 103:01 (6th ed.).

**AGREED INSTRUCTION NO. 5**
**Role of Jury[5]**

As members of the jury, you are the sole and exclusive judges of the facts. You pass upon the evidence. You determine the credibility of the witnesses. You resolve such conflicts as there may be in the testimony. You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

In determining these issues, no one may invade your province or function as jurors. In order for you to determine the facts, you must rely upon your own recollection of the evidence. What the lawyers have said in their opening statements, closing arguments, objections, and questions is not evidence.  Nor is what I may have said about a fact issue unless I instruct you otherwise. You should bear in mind that a question put to a witness is not evidence, it is only the answer which is evidence.

You may not consider any answer or evidence that I directed you to disregard, that I struck, or that was excluded from evidence.  Do not consider such answers or evidence.

Since you are the sole and exclusive judges of the facts, I do not mean to indicate any opinion as to the facts or what your verdict should be unless I give you an instruction to the contrary.  The rulings I have made during the trial are not any indication of my views of what your decision should be as to whether or not Plaintiff has met its burden in this case. It is crucial that you understand that the Court has no opinion as to the verdict you should render in this case.

As to the facts, ladies and gentlemen, you are the exclusive judges. You are to perform the duty of finding the facts without bias or prejudice to any party.

---

[5] 4 Sand, et al., Modern Fed. Jury Instructions-Civil Instr. 71-3 (Modified).

10

# AGREED INSTRUCTION NO. 6
## Direct & Circumstantial Evidence[6]

Two types of evidence that are generally presented during a trial—direct evidence and circumstantial evidence. "Direct evidence" is the testimony of a person who asserts or claims to have actual knowledge of a fact, such as an eyewitness. "Indirect or circumstantial" evidence is proof of a chain of facts and circumstances indicating the existence or nonexistence of a fact.

The law makes no distinction between the weight or value to be given to either direct or circumstantial evidence. Nor is a greater degree of certainty required of circumstantial evidence. You are simply required to find the facts in accordance with the preponderance of all the evidence in the case, both direct and circumstantial.

---

[6] 3B Fed. Jury Prac. & Instr. § 160:55 (6th ed.); Wilkins v. Hogan, 425 F.2d 1022, 1025 n. 1 (10th Cir.1970). Cf. Ramsey v. City & County of Denver, 907 F.2d 1004, 1009 (10th Cir.1990), cert. denied, 506 U.S. 907, 113 S.Ct. 302, 121 L.Ed.2d 225 (1992) (statements were circumstantial or indirect evidence and did not constitute direct evidence ofdiscrimination against plaintiff).

**AGREED INSTRUCTION NO. 7**
**Deposition Testimony[7]**

Certain testimony was presented by way of a deposition. A deposition contains the sworn, recorded answers to questions asked a witness before the trial. A witness's testimony may sometimes be presented in the form of a deposition if the witness is not present or if the testimony in court contradicts the witness's deposition testimony.  Before this trial, attorneys questioned those witnesses under oath. A court reporter and videographer were present and recorded the testimony. The questions and answers were read or shown to you during trial.

You must give this deposition testimony the same consideration as if the witness had been present and had testified from the witness stand in court.

---

[7] 3 Fed. Jury Prac. & Instr. § 102:23 (6th ed.) (Modified).

**AGREED INSTRUCTION NO. 8**
**Burden of Proof[8]**

QueTel has the burden of proving each and every element of each of its claims by a preponderance of the evidence.  If you find that QueTel has not proved any one or more of the elements of a claim by a preponderance of the evidence, you must return a verdict for the applicable Defendant or Defendants on that claim.

---

[8] 3C Fed. Jury Prac. & Instr. § 178:40 (6th ed.) (Modified).

## AGREED INSTRUCTION NO. 9
### Preponderance of the Evidence: Defined[9]

"Establish by a preponderance of the evidence" means to prove that something is more likely so than not so. In other words, a preponderance of the evidence means such evidence as, when considered and compared with the evidence opposed to it, has more convincing force, and produces in your minds belief that what is sought to be proved is more likely true than not true. This standard does not require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

In determining whether any fact in issue has been proved by a preponderance of the evidence you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

Plaintiff, QueTel, must prove by a preponderance of the evidence that defendant Hisham Abbas, Shorouk Mansour, and Final Cover, LLC infringed plaintiff's copyright. If the Plaintiff, QueTel, should fail to establish any essential element of the plaintiff's claim by a preponderance of the evidence, you should find for defendant as to that claim.

Defendants Hisham Abbas, Shorouk Mansour, and Final Cover, LLC must prove by a preponderance of the evidence that plaintiff's copyright is invalid.

---

[9] 3B Fed. Jury Prac. & Instr. § 160:54 (6th ed.); Howard v. Sterchi, 974 F.2d 1272, 1276 (11th Cir.1992).

**AGREED INSTRUCTION NO. 10**
**Elements of plaintiff's copyright infringement claim[10]**

In order to prevail on plaintiff's copyright infringement claim, Plaintiff QueTel Corporation must prove two things:

First: QueTel is the owner of a work protected by the Copyright Act.

Second: Defendants Hisham Abbas, Shorouk Mansour and/or finalcover, LLC infringed one or more of the rights granted by that Act.

Each of these aspects has several elements that I will explain to you.

---

[10] 3B Fed. Jury Prac. & Instr. § 160:21 (6th ed.) (Modified)

**AGREED INSTRUCTION NO. 11**
**Obtaining a Copyright[11]**

A copyright automatically exists in a work the moment the work is created. The owner of the copyright may register the copyright by delivering to the Copyright Office of the Library of Congress a copy of the copyrighted work. After examination and a determination that the material deposited constitutes copyrightable subject matter and that the legal and formal requirements are satisfied, the Register of Copyrights registers the work, and issues a certificate of registration to the copyright owner.

---

[11] 3B Fed. Jury Prac. & Instr. § 160:3 (6th ed.); 17 U.S.C.A. § 408; 37 C.F.R. § 202.

## AGREED INSTRUCTION NO. 12
### Copyright Generally[12]

"Copyright" is the name for the protection that the law extends to an author of an original work against the unauthorized appropriation of that work by others. You are probably accustomed to hearing the word "author" used for writers. But under the copyright law, any creator of an original work is referred to as the author. That is the term we use in the copyright law for the creator of an original work. Copyright protection extends only to the expression of the ideas in the author's work, but never to the ideas themselves.

There are at least two competing considerations involved in a copyright. On the one hand, the creator of a work has the right to reap the benefit of the owner's creativity and effort. On the other hand, progress in art as well as science requires that everyone have the right to develop and create new works using the same ideas and subjects.

The copyright law attempts to strike a balance between these two values, protecting so much of the creator's original work as embodies the creator's own particular form of expression, but not so much as would prevent others from using the same ideas, themes and subjects in their own forms of expression.

---

[12] 3B Fed. Jury Prac. & Instr. § 160:10 (6th ed.); 17 U.S.C.A. § 102; Aldon Accessories Ltd. v. Spiegel, Inc., 738 F.2d 548 (2d Cir.), cert. denied, 469 U.S. 982, 105 S.Ct. 387, 83 L.Ed.2d 321 (1984), overruled on other grounds; Community for Creative Non-Violence v. Reid, 490 U.S. 730, 736 n. 2, 109 S.Ct. 2166, 2171 n. 2, 104 L.Ed.2d 811 (1989).

**AGREED INSTRUCTION NO. 13**
**Ownership of valid copyright[13]**

The first thing QueTel must prove is that plaintiff is the owner of a work protected by the Copyright Act. In order to prove this, QueTel must show the following elements:

First: plaintiff's work is original;

Second: Either QueTel is the author, or plaintiff's relationship with the author permits QueTel to claim ownership of the work; and

Third: QueTel has complied with the formalities of the copyright law.

QueTel's certificate of registration of its copyright from the United States Copyright Office is what is called *prima facie* evidence of QueTel' ownership of a valid copyright.  In other words, if there is no evidence against QueTel as to any element of ownership, the registration certificate alone is sufficient to establish that QueTel is the owner of a work protected by the Copyright Act.

The burden of proof lies with plaintiff QueTel.  You must find QueTel has proved these three elements by a preponderance of the evidence before you may find for the plaintiff in this action.  Because Defendants dispute Plaintiff's ownership of a valid copyright, the disputed elements will be explained to you in the following instructions.

---

[13] 3B Fed. Jury Prac. & Instr. § 160:22 (6th ed.) (Modified)

**AGREED INSTRUCTION NO. 14**
**"Original" Defined[14]**

"Original" means only that the author independently created the work, as opposed to having been copied from other works, and that the work possesses at least some minimal degree of creativity. Originality does not signify novelty. A work may be original even though the work closely resembles other works so long as the similarity is fortuitous or accidental and not the result of copying.

---

[14] 3B Fed. Jury Prac. & Instr. § 160:45 (6th ed.); 17 U.S.C.A. § 102; Harper & Row, Publishers, Inc. v. Nation Enterprises, 471 U.S. 539, 547–49, 105 S.Ct. 2218, 2223–24, 85 L.Ed.2d 588 (1985).

**AGREED INSTRUCTION NO. 15**
**Originality[15]**

Under the copyright law, originality means that the work was independently created by the author and not significantly copied from other works. QueTel's work might resemble other works, but if QueTel independently conceived its work, or at least significant parts of it, then QueTel's work is original.

The work need not be completely, entirely original. It may include or incorporate elements taken from prior works, from works used with their owner's permission or from works in the public domain. If you find that QueTel's work involves variations on pre-existing works, then it is only to the elements of QueTel's work that originated from QueTel that copyright protection extends.

Where QueTel's work was taken from previous work, there is no precise rule as to how much must have originated from QueTel in order for it to claim copyright protection. Trivial originality is not enough.

QueTel must show it has made a substantial original contribution or a substantial original variation distinguishable from prior works. Moreover, the originality must not be merely of a technical or mechanical nature.

---

[15] 3B Fed. Jury Prac. & Instr. § 160:23 (6th ed.) (Modified)

**AGREED INSTRUCTION NO. 16**
**"Copyright" Defined[16]**

A "copyright" is the exclusive right to copy.  The owner of a copyright has the exclusive right to:

1. Reproduce the copyrighted work.

2. Prepare derivative works based upon the copyrighted work.

3. Distribute copies or sound recordings of the copyrighted work to the public by sale or other transfer of ownership or by rental, lease, or lending.

4. Perform publicly a copyrighted literary work, musical work, dramatic work, choreographic work, pantomime work, motion picture, or Computer program].

5. Display publicly a copyrighted literary work, musical work, dramatic work, choreographic work, pantomime work, pictorial work, graphic work, sculptural work, the individual images of a motion picture, or computer program.

The term "owner" includes the author of the work, an assignee, and an exclusive licensee.

---

[16] 3B Fed. Jury Prac. & Instr. § 160:40 (6th ed.); 17 U.S.C.A. § 106. See 17 U.S.C.A. §§ 107 to 121 for exceptions.

**AGREED INSTRUCTION NO. 17**
**Subject Matter[17]**

Original works of authorship fixed or produced in any tangible medium or form of expression from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device are protected by the Copyright Act.

Works of authorship include computer programs.

---

[17] 3B Fed. Jury Prac. & Instr. § 160:4 (6th ed.) (Modified).

**AGREED INSTRUCTION NO. 18**
**"Computer Program" Defined for Purposes of Copyright Infringement[18]**

For the purposes of the Copyright Act, a "computer program" is a set of statements or instructions to be used directly or indirectly in a computer to bring about a certain result.

---

[18]3B Fed. Jury Prac. & Instr. § 160:51 (6th ed.); 17 U.S.C.A. § 101

## AGREED INSTRUCTION NO. 19
## Copyright Infringement - Copying[19]

In addition to establishing Plaintiff, QueTel, is the copyright owner of the work in question, Plaintiff, QueTel, must also prove defendants Hisham Abbas, Shorouk Mansour, and Final Cover, LLC infringed Plaintiff, QueTel's rights in that work.

In order to establish infringement, Plaintiff, QueTel, must prove defendant's work was copied or taken from plaintiff's work. No matter how similar the two works are, Plaintiff, QueTel, may not recover against defendants unless that similarity is the result of the copying or taking of plaintiff's work, directly or indirectly, intentionally or unintentionally.

Furthermore, there is no liability unless it is the original aspects of the plaintiff's work that are copied or taken. If defendants copy or take only those portions of plaintiff's work which were not original with plaintiff, that is, portions Plaintiff, QueTel, had in turn copied or taken from somebody else, then defendant is not liable for copyright infringement.

---

[19] 3B Fed. Jury Prac. & Instr. § 160:26 (6th ed.); Aldon Accessories Ltd. v. Spiegel, Inc., 738 F.2d 548 (2d Cir.), cert. denied, 469 U.S. 982, 105 S.Ct. 387, 83 L.Ed.2d 321 (1984), overruled on other grounds; Community for Creative Non-Violence v. Reid, 490 U.S. 730, 736 n. 2, 109 S.Ct. 2166, 2171 n. 2, 104 L.Ed.2d 811 (1989).

## AGREED INSTRUCTION NO. 20
### Copyright Infringement - Statutory damages[20]

If you find Plaintiff, QueTel, is the copyright owner and that defendants, Hisham Abbas, Shorouk Mansour, and Final Cover, LLC infringed plaintiff's copyrighted work, plaintiff, QueTel, has elected to recover "statutory damages" instead of plaintiff's actual damages and profits.

Under the Copyright Act, Plaintiff, QueTel, is entitled to a sum of not less than $750 or more than $30,000 as you consider just.

In determining the just amount of statutory damages, you may consider the willfulness of the defendant's conduct, the defendant's innocence, the defendant's continuation of infringement after notice or knowledge of the copyright or in reckless disregard of the copyright, effect of the defendant's prior or concurrent copyright infringement activity, and whether profit or gain was established.

You may award as statutory damages an amount that you find to be fair under the circumstances. The amount must be between $750 and $30,000 for each copyrighted work that you found to be infringed. In determining the appropriate amount to award, you may consider the following factors:

- the expenses that Defendant saved and the profits that he earned because of the infringement;

- the revenues that Plaintiff, QueTel, lost because of the infringement;

- the difficulty of proving Plaintiff's actual damages;

---

[20] 3B Fed. Jury Prac. & Instr. § 160:92 (6th ed.); Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 12.8.4 (2009); Feltner v. Columbia Pictures Television, Inc., 523 U.S. 340, 353 (1998).

- the circumstances of the infringement; and

- deterrence of future infringement.

If Plaintiff, QueTel, proves that Defendant willfully infringed Plaintiff's copyright, then you may, but are not required to, increase the statutory damage award to a sum as high as $150,000 per copyrighted work. Infringement is considered willful if Plaintiff, QueTel, proves that Defendant knew that his actions constituted infringement of Plaintiff's copyright or acted with reckless disregard of Plaintiff's copyright.

2

**AGREED INSTRUCTION NO. 21**
**Willful: Defined for Purposes of Copyright Infringement[21]**

"Willful" means defendants Hisham Abbas, Shorouk Mansour, and Final Cover, LLC

had knowledge that their actions constituted copyright infringement.

---

[21] 3B Fed. Jury Prac. & Instr. § 160:53 (6th ed.); Fitzgerald Pub. Co. v. Baylor Pub. Co., 807 F.2d 1110 (2d Cir.1986).

## AGREED INSTRUCTION NO. 22
### Copyright Infringement: Damages Generally[22]

If you find QueTel had a valid copyright and you find the copyright was infringed by one or more Defendants – Hisham Abbas, Shorouk Mansour and/or finalcover, LLC, you should find for QueTel. You must then decide on the amount of damages QueTel is entitled to recover.

Basically, the law allows a successful plaintiff to recover the actual damages suffered by QueTel as a result of the infringement, including unrecovered costs and lost profits, and also any profits of Defendants attributable to the infringement that you have not already taken into account or properly covered in figuring QuTel's lost profits.

Defendants' profits consist of the amount of money Defendants have made due to the infringement, after deducting evidence of their expenses in producing and marketing the infringing work.

QueTel is not necessarily entitled to all of Defendants' profits, but only to the part of their profits due to the infringement. If Defendants' work was profitable for reasons that had nothing to do with Defendants' infringement of QueTel's work, then the QueTel is not entitled to recover the Defendants' profits, because they did not result from the infringement.

If you reach that point, you must decide to what extent Defendants' sales and profits were attributable to copyright infringement, and whether QueTel is entitled to all of Defendants' profits, or none of the defendant's profits, or something in between.

Profits are determined by deducting all expenses from gross revenue.  Gross revenue is all of defendant's receipts from the use or sale of a work containing or using the copyrighted

---

[22] 3B Fed. Jury Prac. & Instr. § 160:89 (6th ed.) (Modified); 3B Fed. Jury Prac. & Instr. § 160:91 (6th ed.) (Modified).

work. Expenses are all operating or overheard and production costs incurred in producing the gross revenue.

Unless you find that a portion of the profit from the use or sale of a product or work containing or using the copyrighted work is attributable to factors other than use of the copyrighted work, the total profit is attributable to the infringement.

QueTel has the burden of proving gross revenue by a preponderance of the evidence. Defendants have the burden of proving the expenses and the portion of the profits attributable to factors other than the copyrighted work by a preponderance of the evidence.

**AGREED INSTRUCTION NO. 23**
**Trade Secret Misappropriation: Misappropriation Defined[23]**

"Misappropriation" means:

1. Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

2. Disclosure or use of a trade secret of another without express or implied consent by a person who:

    a. Used improper means to acquire knowledge of the trade secret; or

    b. At the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:

        (1) Derived from or through a person who had utilized improper means to acquire it;

        (2) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use;

        (3) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

        (4) Acquired by accident or mistake.

---

[23] Va. Code § 59.1-336.

**AGREED INSTRUCTION NO. 24**
**Trade Secret Misappropriation:  Improper Means Defined[24]**

"Improper means" includes theft, bribery, misrepresentation, use of a computer or computer network without authority, or breach of a duty or inducement of a breach of a duty to maintain secrecy.

---

[24] Va. Code § 59.1-336 (with "espionage" term left out).

**AGERED INSTRUCTION NO. 25**
**Virginia Computer Crimes Act: Elements[25]**

Plaintiff QueTel Corporation has also alleged that one or more of the Defendants violated the Virginia Computer Crimes Act ("VCCA") by committing Computer Trespass.  Under the VCCA's Computer Trespass statute, it is unlawful for any person to remove any computer data, computer programs or computer software from a computer or computer network, or to use a computer or computer network to make or cause to be made an unauthorized copy, in any form, of computer programs or computer software residing in, communicated by, or produced by a computer or computer network.

---

[25] Va. Code § 18.2-152.4

**AGREED INSTRUCTION NO. 26**
**Virginia Computer Crimes Act: Definitions[26]**

Under the VCCA, a "computer" is defined as a device that accepts information in digital or similar form and manipulates it for a result based on a sequence of instructions. However, it does not include simple calculators, automated typewriters, facsimile machines, or any other specialized computing devices that are preprogrammed to perform a narrow range of functions with minimal end-user or operator intervention and are dedicated to a specific task.

A "computer program" is defined as an ordered set of data representing coded instructions or statements that, when executed by a computer, causes the computer to perform one or more computer operations.

"Computer Software" is defined as a set of computer programs, procedures and associated documentation concerned with computer data or with the operation of a computer, computer program, or computer network.

"Computer data" is defined as any representation of information, knowledge, facts, concepts, or instructions which is being prepared or has been prepared and is intended to be processed, is being processed, or has been processed in a computer or computer network. "Computer data" may be in any form, whether readable only by a computer or only by a human or by either, including, but not limited to, computer printouts, magnetic storage media, punched cards, or stored internally in the memory of the computer.

A "computer network" is defined as two or more computers connected by a network.

A "network" is defined as any combination of digital transmission facilities and packet switches, routers, and similar equipment interconnected to enable the exchange of computer data.

---

[26] Va. Code § 18.2-152.2.

**AGREED INSTRUCTION NO. 27**
**Definition of Contract[27]**

Plaintiff QueTel Corporation has also sued Mr. Abbas for breach of his employment contract with QueTel.

A contract is an agreement, for consideration, between two or more parties. A contract arises when an offer is accepted.

---

[27] Virginia Model Jury Instruction ("VMJI") No. 45.010.

**AGREED INSTRUCTION NO. 28**
**Material Breach of Contract[28]**

A material breach of contract occurs if a party fails to do something which he is bound to do according to the contract which is so important and central to the contract that the failure defeats the very purpose of the contract.

---

[28] VMJI No. 45.400.

**AGREED INSTRUCTION NO. 29**
**Contract Must Be Complete and Reasonably Certain[29]**

A contract must be both complete and reasonably certain. It is complete if it includes all the essential terms. It is reasonably certain if all the essential terms are expressed in a clear and definite way.

---

[29] VMJI No. 45.170; Va. Code Ann. § 8.2-201; Dean v. Morris, 287 Va. 531, 537-38

**AGREED INSTRUCTION NO. 30**
**Contract Intent[30]**

Interpretation of a contract is primarily a determination of what the parties intended. In determining their intent, you should first consider the words they used. The words should be given their plain and ordinary meaning unless an obviously different meaning is apparent. You may also consider the subject matter of the contract, the situation of the parties, the purpose of the parties in making the contract, and the surrounding circumstances.

---

[30] VMJI No. 45.190; Swords Creek Land Partnership v. Belcher, 288 Va. 206, 212.

**AGREED INSTRUCTION NO. 31**
**Construction Against the Drafter[31]**

In interpreting a contract, you should resolve any doubts about the meaning of a word or

phrase against the party who prepared the contract.

---

[31] VMJI  No. 45.310; Robinson-Huntley v. George Washington Carver Mut. Homes Ass'n, Inc., 287 Va. 425, 431.

**AGREED INSTRUCTION NO. 32**
**Breach of Contract Damages: Direct[32]**

If you find that Mr. Abbas breached his employment agreement with QueTel, then QueTel

is entitled to recover as damages all of the losses it sustained, including gains prevented, that are

a natural and ordinary result of the breach.

---

[32] VMJI No. 45.500 (Modified).

**AGREED INSTRUCTION NO. 33**
**Damages:  Reasonable Proof[33]**

With respect to QueTel's claims for damages, the burden is on QueTel to prove by the greater weight of the evidence that he sustained damages. It is not required to prove the exact amount of its damages, but it must show sufficient facts and circumstances to permit you to make a reasonable estimate of them.

---

[33] VMJI No. 45.510 (modified).

**AGREED INSTRUCTION NO. 34**
**Business Conspiracy: Elements[34]**

QueTel has also alleged that Defendants engaged in a conspiracy in violation of Virginia law to harm QueTel' business interests. You shall find your verdict for the plaintiff if plaintiff has proven by clear and convincing evidence:

(1)     That two or more of the Defendants – finalcover, Mr. Abbas, and Ms. Mansour – acted in concert, agreed, associated, mutually undertook or combined together;

(2)     That they intentionally, purposefully, and without lawful justification injured the QueTel's reputation, trade business or profession; and

(3)     That QueTel suffered damages as a result of Defendants' acts.

You shall find your verdict for the defendant if the plaintiff failed to prove any one or more of these elements.

---

[34] VMJI 40.350 (Modified).

**AGREED INSTRUCTION NO. 35**
**Punitive Damages[35]**

If you find that QueTel is entitled to be compensated for its damages on Counts II, III, V, VI, VII and/or VIII, and if you further believe by the greater weight of the evidence that the Defendants who are liable under such counts acted with actual malice toward QueTel or acted under circumstances amounting to a willful and wanton disregard of QueTel's rights, then you may also award punitive damages to QueTel punish such Defendants for their actions and to serve as an example to deter the Defendants and others from acting in a similar way.  Actual malice is a sinister or corrupt motive such as hatred, personal spite, ill will, or a desire to injure the plaintiff.

If you award punitive damages, you must state separately in your verdict the amount you allow as compensatory damages and the amount you allow as punitive damages.

---

[35] VMJI No. 9.080 (Modified); VMJI 9.090.

## AGREED INSTRUCTION NO. 36
### Effect of Refusal of Witness to Answer[36]

The law requires every witness to answer all proper questions put to the witness at trial, unless I rule the witness is privileged to refuse to answer on constitutional or other grounds.

The fact a witness refuses to answer a question after being instructed by me to answer it may be considered by the jury as one of the factors in determining the credibility of the witness and the weight his or her testimony deserves.

---

[36] 3B Fed. Jury Prac. & Instr. § 105:10 (6th ed.); N. Sims Organ & Co. v. SEC, 293 F.2d 78 (2d Cir.1961), cert. denied, 368 U.S. 968, 82 S.Ct. 440, 7 L.Ed.2d 396 (1962).

**AGREED INSTRUCTION NO. 37**
**Discrepancies in Testimony[37]**

You are the sole judges of the credibility of the witnesses and the weight their testimony deserves. You may be guided by the appearance and conduct of a witness, or by the manner in which a witness testifies, or by the character of the testimony given, or by evidence contrary to the testimony.

You should carefully examine all the testimony given, the circumstances under which each witness has testified, and every matter in evidence tending to show whether a witness is worthy of belief. Consider each witness' intelligence, motive and state of mind, and demeanor or manner while testifying.

Consider the witness' ability to observe the matters as to which the witness has testified, and whether the witness impresses you as having an accurate recollection of these matters. Also, consider any relation each witness may have with either side of the case, the manner in which each witness might be affected by the verdict, and the extent to which the testimony of each witness is either supported or contradicted by other evidence in the case

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses may or may not cause you to discredit such testimony. Two or more persons seeing an event may see or hear it differently.

In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

---

[37] 3B Fed. Jury Prac. & Instr. § 105:01 (6th ed.); United States v. Schwartz, 398 F.2d 464, 469 (7th Cir.1968), cert. denied sub nom., Pyne v. United States, 393 U.S. 1062, 89 S.Ct. 714, 21 L.Ed.2d 705 (1969);  United States v. Hastings, 577 F.2d 38, 42 (8th Cir.1978).

After making your own judgment, you will give the testimony of each witness such weight, if any, that you may think it deserves. In short, you may accept or reject the testimony of any witness, in whole or in part.

In addition, the weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or nonexistence of any fact. You may find that the testimony of a small number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

**AGREED INSTRUCTION NO. 38**
**Answers to Interrogatories[38]**

Each party has introduced into evidence certain interrogatories—that is, questions together with answers signed and sworn to by the other party. A party is bound by its sworn answers.

By introducing an opposing party's answers to interrogatories, the introducing party does not bind itself to those answers. The introducing party may challenge the opposing party's answers in whole or in part or may offer contrary evidence.

---

[38] 3B Fed. Jury Prac. & Instr. § 104:72 (6th ed.); Fed. R. Civ. P. 33.

## AGREED INSTRUCTION NO. 39
### Number of Witnesses[39]

The weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or nonexistence of any fact. You may find the testimony of a small number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

You are not bound to decide any issue of fact in accordance with the testimony of any number of witnesses that does not produce in your minds belief in the likelihood of truth, as against the testimony of a lesser number of witnesses or other evidence producing such belief in your minds.

The test is not which side brings the greater number of witnesses or takes the most time to present its evidence, but which witnesses and which evidence appeal to your minds as being most accurate and otherwise trustworthy.

---

[39] 3B Fed. Jury Prac. & Instr. § 104:54 (6th ed.); Houser v. Folino, 99 Fed. R. Evid. Serv. 1066 (W.D. Pa. 2016); United States v. Jones, 486 F.2d 476, 479 (8th Cir.1973), cert. denied, 415 U.S. 917, 94 S.Ct. 1415, 39 L.Ed.2d 472 (1974), with the suggestion that it would be proper in a civil or a criminal case.

**AGREED INSTRUCTION NO. 40**
**Charts and Summaries[40]**

Charts and summaries have been shown to you in order to help explain facts disclosed by books, records, and other documents in evidence in the case. These charts or summaries are not themselves evidence or proof of any facts. If the charts or summaries do not correctly reflect facts or figures shown by the evidence in the case, you should disregard them.

The charts and summaries are used only as a matter of convenience. To the extent that you find they are not truthful summaries of facts or figures shown by the evidence in the case, you are to disregard them entirely.

---

[40] 3B Fed. Jury Prac. & Instr. § 104:50 (6th ed.); Federal Rules of Evidence 1006; Bristol Steel & Iron Works, Inc. v. Bethlehem Steel Corp., 41 F.3d 182, 189 (4th Cir.1994).

**AGREED INSTRUCTION NO. 41**
**Statistics[41]**

Statistics should be considered with care. They are not irrefutable, and, like any other kind of evidence, they may be rebutted.

---

[41] 3B Fed. Jury Prac. & Instr. § 104:43 (6th ed.); McAlester v. United Air Lines, Inc., 851 F.2d 1249, 1258 (10th Cir.1988).

**AGREED INSTRUCTION NO. 42**
**Evidence Admitted for a Limited Purpose Only**[42]

Sometimes evidence may be admitted concerning only a particular party or only for a particular purpose and not generally against all parties or for all purposes. For the limited purpose for which this evidence has been received you may give it such weight as you feel it deserves. You may not, however, use this evidence for any other purpose or against any party not specifically mentioned.

---

[42] 3B Fed. Jury Prac. & Instr. § 104:42 (6th ed.); Fed. R. Evid. 105.

**AGREED INSTRUCTION NO. 43**
**Inferences[43]**

You are to consider only the evidence in the case. However, you are not limited to the statements of the witnesses.   You may draw from the facts you find have been proved such reasonable inferences as seem justified in light of your experience.

"Inferences" are deductions or conclusions that reason and common sense lead you to draw from facts established by the evidence in the case.

---

[43] 3B Fed. Jury Prac. & Instr. § 104:20 (6th ed.); Wilkins v. American Export Isbrandtsen Lines, Inc., 446 F.2d 480, 484 (2d Cir.1971), cert. denied, 404 U.S. 1018, 92 S.Ct. 679, 30 L.Ed.2d 665 (1972).

## AGREED INSTRUCTION NO. 44
### Duty to Deliberate[44]

The verdict must represent the considered judgment of each of you. In order to return a verdict, it is necessary that each juror agree. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another, and to deliberate with a view to reaching an agreement, if you can do so without disregard of individual judgment. You must each decide the case for yourself, but only after an impartial consideration of the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate     to reexamine your own views, and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence, solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times that you are not partisans. You are judges—judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

---

[44] 3B Fed. Jury Prac. & Instr. § 106:01 (6th ed.); Grace Lines, Inc. v. Motley, 439 F.2d 1028, 1031 (2d Cir.1971).

## AGREED INSTRUCTION NO. 45
### Rules for Deliberation[45]

You must follow the following rules while deliberating, reaching, and returning your verdict:

*First*, when you go to the jury room, you must select a foreperson. The foreperson will preside over your discussions and speak for you here in court.

*Second*, it is your duty, as jurors, to discuss this case with one another in the jury room and to try to reach agreement. Each of you must make your own conscientious decision, but only after you have considered all the evidence, discussed it fully with the other jurors, and listened to the views of the other jurors. Do not be afraid to change your opinions if the discussion persuades you that you should. But do not make a decision simply because other jurors think it is right, or simply to reach a verdict.  Remember at all times you are the judges of the facts. Your sole interest is to seek the truth from the evidence in this case.

*Third*, if you need to communicate with me during your deliberations, you may send a note to me through the marshal or bailiff, signed by your foreperson.  I will respond as soon as possible either in writing or orally in open court. Remember that you should not tell anyone, including me, how your votes stand numerically.

*Fourth*, your verdicts must be based solely on the evidence and on the law that I have given to you in my instructions.  Nothing I have said or done is intended to suggest what your verdicts should be; that is entirely for you to decide.

*Finally*, the verdict forms and any special interrogatories are simply the written notice of the decisions that you reach in this case. You will take these forms to the jury room, and when

---

[45] 3 Fed. Jury Prac. & Instr. § 103:50 (6th ed.) (Modified).

each of you has agreed on the verdicts, your foreperson will fill in the forms, sign and date them,

and advise the marshal or bailiff that you are ready to return to the courtroom.

# AGREED PROPOSED JURY INSTRUCTIONS

# WITHOUT CITATIONS

## AGREED INSTRUCTION NO. 1
### Pre-Trial Instruction
### (To be read before opening statements)

We are about to begin the trial of the case you heard about during the jury selection. Before the trial begins, I am going to give you instructions that will help you to understand what will be presented to you and how you should conduct yourself during the trial.

During the trial you will hear me use a few terms that you may not have heard before. Let me briefly explain some of the most common to you. The party who sues is called the plaintiff.  In this action, the plaintiff is QueTel Corporation.

The party or parties being sued are called the defendant or defendants. In this action, there are three defendants: Hisham Abbas, Shorouk Mansour, and finalcover, LLC, which may be referred to as "finalcover."

You will sometimes hear me refer to "counsel." "Counsel" is another way of saying "lawyer" or "attorney." I will sometimes refer to myself as the "Court."

When I "sustain" an objection, I am excluding evidence from this trial for a good reason. When I "overrule" an objection, I am permitting that evidence to be admitted.

When I say "admitted into evidence" or "received into evidence," I mean that a particular statement or exhibit may be considered by you in making the decisions you must make at the end of the case.

By your verdict, you will decide disputed issues of fact. I will decide all questions of law that arise during the trial. Before you begin your deliberation at the close of the case, I will instruct you in more detail on the law that you must follow and apply.

Because you will be asked to decide the facts of this case, you should give careful attention to the testimony and evidence presented. Keep in mind that I will instruct you at the

56

end of the trial about determining the credibility or "believability" of the witnesses.  During the trial you should keep an open mind and should not form or express any opinion about the case until you have heard all of the testimony and evidence, the lawyer's closing arguments, and any instructions I give to you.

While the trial is in progress, you must not discuss the case in any manner among yourselves or with anyone else.  In addition, you should not permit anyone to discuss the case in your presence. You should avoid any news articles that might be—or have been— published about this case or issues related to this case. You should also avoid watching or listening to any television or radio comments or comments on the internet about the trial or the issues discussed during the trial.

From time-to-time during the trial, I may make rulings on objections or motions made by the lawyers.  It is a lawyer's duty to object when the other side offers testimony or other evidence the lawyer believes is not admissible. You should not be biased or partial against a lawyer or a lawyer's client because a lawyer has made objections. If I sustain or uphold an objection to a question that goes unanswered by the witness, you should not draw any inferences or conclusions from the question. You should not infer or conclude from any ruling or other comment I may make that I have any opinions on the merits of the case favoring one side or the other. I do not favor one side or the other.

The lawyers are not allowed to speak with you during this case. When you see the lawyers at a recess or pass them in the halls and they do not speak to you, they are not being rude or unfriendly; they are simply following the law.

During the trial, it may be necessary for me to talk with the lawyers out of your hearing about questions of law or procedure. Sometimes, you may be excused from the courtroom

during these discussions. I will try to limit these interruptions as much as possible, but you should remember the importance of the matter you are here to determine and should be patient even though the case may seem to go slowly.

**AGREED INSTRUCTION NO. 2**
**Trial Process**
**(To be read before opening statements)**

The case will proceed as follows:

*First*, the lawyers for each side may make opening statements. What is said in the opening statements is not evidence, but is simply an outline or summary to help you understand what each party expects the evidence to show.

After the opening statements, QueTel will present evidence in support of its claim and Defendants' lawyer may cross-examine the witnesses. At the conclusion of QueTel's case, the defendants, Mr. Abbas, Ms. Mansour, and finalcover, may introduce evidence and QueTel's lawyers may cross-examine the witnesses.  Following the Defendants' case, QueTel may then present rebuttal evidence.

After the evidence is presented, the parties' lawyers make closing arguments explaining what they believe the evidence has shown. What is said in closing arguments is not evidence.

Finally, I will instruct you on the law that you are to apply in reaching your verdict. You will then decide the case.

## AGREED INSTRUCTION NO. 3
### Consider Only Evidence Presented In Court
### (To be read before opening statements)

As far as your own conduct during the trial, I must caution you that you are not to discuss this case either among yourselves or with anyone else during the trial.

You must not permit any third person to discuss the case in your presence, and if anyone does so, despite your telling them not to, you should report that fact to me. I understand that it is a normal human tendency to want to talk with people with whom one comes into contact; however, please do not, during the time you serve on this jury, speak, whether in or out of the courtroom, with any of the parties or their lawyers or any witnesses. By this I mean not only do not speak about the case but also do not speak at all even to pass the time of day. In no other way can all the parties be assured of the absolute impartiality they are entitled to expect from you as jurors.

It is important that this trial is treated seriously and that the jury maintain proper decorum in the courtroom.  Please refrain from talking to each other while we are on the record. Please do not react with any comments or other audible response to any questions asked by counsel or answers given by the witnesses.

In fairness to the parties to this lawsuit, you should keep an open mind throughout the trial, reaching your conclusion only during your final deliberations after all the evidence is in and you have heard the attorneys' closing arguments and my instructions on the law. You will then be in a position to intelligently and fairly exchange your views with other jurors as you deliberate upon the verdict to be submitted by you.

**AGREED INSTRUCTION NO. 4**
**Post-Evidence Introductory Instruction**

Now that you have heard the evidence and the argument, it is my duty to instruct you about the applicable law. It is your duty to follow the law as I will state it. You must apply the law to the facts as you find them from the evidence in the case. Do not single out one instruction as stating the law, but consider the instructions as a whole. Do not be concerned about the wisdom of any rule of law stated by me.  You must follow and apply the law.

Nothing I say in these instructions indicates I have any opinion about the facts. You, not I, have the duty to determine the facts.

You must perform your duties as jurors without bias or prejudice to any party. The law does not permit you to be controlled by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all the evidence, follow the law, as it is now being given to you, and reach a just verdict, regardless of the consequences.

## AGREED INSTRUCTION NO. 5
### Role of Jury

As members of the jury, you are the sole and exclusive judges of the facts. You pass upon the evidence. You determine the credibility of the witnesses. You resolve such conflicts as there may be in the testimony. You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

In determining these issues, no one may invade your province or function as jurors. In order for you to determine the facts, you must rely upon your own recollection of the evidence. What the lawyers have said in their opening statements, closing arguments, objections, and questions is not evidence.  Nor is what I may have said about a fact issue unless I instruct you otherwise. You should bear in mind that a question put to a witness is not evidence, it is only the answer which is evidence.

You may not consider any answer or evidence that I directed you to disregard, that I struck, or that was excluded from evidence.  Do not consider such answers or evidence.

Since you are the sole and exclusive judges of the facts, I do not mean to indicate any opinion as to the facts or what your verdict should be unless I give you an instruction to the contrary.  The rulings I have made during the trial are not any indication of my views of what your decision should be as to whether or not Plaintiff has met its burden in this case. It is crucial that you understand that the Court has no opinion as to the verdict you should render in this case.

As to the facts, ladies and gentlemen, you are the exclusive judges. You are to perform the duty of finding the facts without bias or prejudice to any party.

**AGREED INSTRUCTION NO. 6**
**Direct & Circumstantial Evidence**

Two types of evidence that are generally presented during a trial—direct evidence and circumstantial evidence. "Direct evidence" is the testimony of a person who asserts or claims to have actual knowledge of a fact, such as an eyewitness. "Indirect or circumstantial" evidence is proof of a chain of facts and circumstances indicating the existence or nonexistence of a fact.

The law makes no distinction between the weight or value to be given to either direct or circumstantial evidence. Nor is a greater degree of certainty required of circumstantial evidence. You are simply required to find the facts in accordance with the preponderance of all the evidence in the case, both direct and circumstantial.

**AGREED INSTRUCTION NO. 7**
**Deposition Testimony**

Certain testimony was presented by way of a deposition. A deposition contains the sworn, recorded answers to questions asked a witness before the trial. A witness's testimony may sometimes be presented in the form of a deposition if the witness is not present or if the testimony in court contradicts the witness's deposition testimony.  Before this trial, attorneys questioned those witnesses under oath. A court reporter and videographer were present and recorded the testimony. The questions and answers were read or shown to you during trial.

You must give this deposition testimony the same consideration as if the witness had been present and had testified from the witness stand in court.

## AGREED INSTRUCTION NO. 8
### Burden of Proof

QueTel has the burden of proving each and every element of each of its claims by a preponderance of the evidence.  If you find that QueTel has not proved any one or more of the elements of a claim by a preponderance of the evidence, you must return a verdict for the applicable Defendant or Defendants on that claim.

## AGREED INSTRUCTION NO. 9
### Preponderance of the Evidence: Defined

"Establish by a preponderance of the evidence" means to prove that something is more likely so than not so. In other words, a preponderance of the evidence means such evidence as, when considered and compared with the evidence opposed to it, has more convincing force, and produces in your minds belief that what is sought to be proved is more likely true than not true. This standard does not require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

In determining whether any fact in issue has been proved by a preponderance of the evidence you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

Plaintiff, QueTel, must prove by a preponderance of the evidence that defendant Hisham Abbas, Shorouk Mansour, and Final Cover, LLC infringed plaintiff's copyright. If the Plaintiff, QueTel, should fail to establish any essential element of the plaintiff's claim by a preponderance of the evidence, you should find for defendant as to that claim.

Defendants Hisham Abbas, Shorouk Mansour, and Final Cover, LLC must prove by a preponderance of the evidence that plaintiff's copyright is invalid.

**AGREED INSTRUCTION NO. 10**
**Elements of plaintiff's copyright infringement claim**

In order to prevail on plaintiff's copyright infringement claim, Plaintiff QueTel Corporation must prove two things:

First: QueTel is the owner of a work protected by the Copyright Act.

Second: Defendants Hisham Abbas, Shorouk Mansour and/or finalcover, LLC infringed one or more of the rights granted by that Act.

Each of these aspects has several elements that I will explain to you.

67

**AGREED INSTRUCTION NO. 11**
**Obtaining a Copyright**

A copyright automatically exists in a work the moment the work is created. The owner of the copyright may register the copyright by delivering to the Copyright Office of the Library of Congress a copy of the copyrighted work. After examination and a determination that the material deposited constitutes copyrightable subject matter and that the legal and formal requirements are satisfied, the Register of Copyrights registers the work, and issues a certificate of registration to the copyright owner.

## AGREED INSTRUCTION NO. 12
## Copyright Generally

"Copyright" is the name for the protection that the law extends to an author of an original work against the unauthorized appropriation of that work by others. You are probably accustomed to hearing the word "author" used for writers. But under the copyright law, any creator of an original work is referred to as the author. That is the term we use in the copyright law for the creator of an original work. Copyright protection extends only to the expression of the ideas in the author's work, but never to the ideas themselves.

There are at least two competing considerations involved in a copyright. On the one hand, the creator of a work has the right to reap the benefit of the owner's creativity and effort. On the other hand, progress in art as well as science requires that everyone have the right to develop and create new works using the same ideas and subjects.

The copyright law attempts to strike a balance between these two values, protecting so much of the creator's original work as embodies the creator's own particular form of expression, but not so much as would prevent others from using the same ideas, themes and subjects in their own forms of expression.

## AGREED INSTRUCTION NO. 13
## Ownership of valid copyright

The first thing QueTel must prove is that plaintiff is the owner of a work protected by the Copyright Act. In order to prove this, QueTel must show the following elements:

First: plaintiff's work is original;

Second: Either QueTel is the author, or plaintiff's relationship with the author permits QueTel to claim ownership of the work; and

Third: QueTel has complied with the formalities of the copyright law.

QueTel's certificate of registration of its copyright from the United States Copyright Office is what is called *prima facie* evidence of QueTel' ownership of a valid copyright.  In other words, if there is no evidence against QueTel as to any element of ownership, the registration certificate alone is sufficient to establish that QueTel is the owner of a work protected by the Copyright Act.

The burden of proof lies with plaintiff QueTel.  You must find QueTel has proved these three elements by a preponderance of the evidence before you may find for the plaintiff in this action.  Because Defendants dispute Plaintiff's ownership of a valid copyright, the disputed elements will be explained to you in the following instructions.

**AGREED INSTRUCTION NO. 14**
**"Original" Defined**

"Original" means only that the author independently created the work, as opposed to having been copied from other works, and that the work possesses at least some minimal degree of creativity. Originality does not signify novelty. A work may be original even though the work closely resembles other works so long as the similarity is fortuitous or accidental and not the result of copying.

**AGREED INSTRUCTION NO. 15**
**Originality**

Under the copyright law, originality means that the work was independently created by the author and not significantly copied from other works. QueTel's work might resemble other works, but if QueTel independently conceived its work, or at least significant parts of it, then QueTel's work is original.

The work need not be completely, entirely original. It may include or incorporate elements taken from prior works, from works used with their owner's permission or from works in the public domain. If you find that QueTel's work involves variations on pre-existing works, then it is only to the elements of QueTel's work that originated from QueTel that copyright protection extends.

Where QueTel's work was taken from previous work, there is no precise rule as to how much must have originated from QueTel in order for it to claim copyright protection. Trivial originality is not enough.

QueTel must show it has made a substantial original contribution or a substantial original variation distinguishable from prior works. Moreover, the originality must not be merely of a technical or mechanical nature.

**AGREED INSTRUCTION NO. 16**
**"Copyright" Defined**

A "copyright" is the exclusive right to copy.  The owner of a copyright has the exclusive right to:

1. Reproduce the copyrighted work.

2. Prepare derivative works based upon the copyrighted work.

3. Distribute copies or sound recordings of the copyrighted work to the public by sale or other transfer of ownership or by rental, lease, or lending.

4. Perform publicly a copyrighted literary work, musical work, dramatic work, choreographic work, pantomime work, motion picture, or Computer program].

5. Display publicly a copyrighted literary work, musical work, dramatic work, choreographic work, pantomime work, pictorial work, graphic work, sculptural work, the individual images of a motion picture, or computer program.

The term "owner" includes the author of the work, an assignee, and an exclusive licensee.

**AGREED INSTRUCTION NO. 17**
**Subject Matter**

Original works of authorship fixed or produced in any tangible medium or form of expression from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device are protected by the Copyright Act.

Works of authorship include computer programs.

**AGREED INSTRUCTION NO. 18**
**"Computer Program" Defined for Purposes of Copyright Infringement**

For the purposes of the Copyright Act, a "computer program" is a set of statements or instructions to be used directly or indirectly in a computer to bring about a certain result.

**AGREED INSTRUCTION NO. 19**
**Copyright Infringement - Copying**

In addition to establishing Plaintiff, QueTel, is the copyright owner of the work in question, Plaintiff, QueTel, must also prove defendants Hisham Abbas, Shorouk Mansour, and Final Cover, LLC infringed Plaintiff, QueTel's rights in that work.

In order to establish infringement, Plaintiff, QueTel, must prove defendant's work was copied or taken from plaintiff's work. No matter how similar the two works are, Plaintiff, QueTel, may not recover against defendants unless that similarity is the result of the copying or taking of plaintiff's work, directly or indirectly, intentionally or unintentionally.

Furthermore, there is no liability unless it is the original aspects of the plaintiff's work that are copied or taken. If defendants copy or take only those portions of plaintiff's work which were not original with plaintiff, that is, portions Plaintiff, QueTel, had in turn copied or taken from somebody else, then defendant is not liable for copyright infringement.

**AGREED INSTRUCTION NO. 20**
**Copyright Infringement - Statutory damages**

If you find Plaintiff, QueTel, is the copyright owner and that defendants, Hisham Abbas, Shorouk Mansour, and Final Cover, LLC infringed plaintiff's copyrighted work, plaintiff, QueTel, has elected to recover "statutory damages" instead of plaintiff's actual damages and profits.

Under the Copyright Act, Plaintiff, QueTel, is entitled to a sum of not less than $750 or more than $30,000 as you consider just.

In determining the just amount of statutory damages, you may consider the willfulness of the defendant's conduct, the defendant's innocence, the defendant's continuation of infringement after notice or knowledge of the copyright or in reckless disregard of the copyright, effect of the defendant's prior or concurrent copyright infringement activity, and whether profit or gain was established.

You may award as statutory damages an amount that you find to be fair under the circumstances. The amount must be between $750 and $30,000 for each copyrighted work that you found to be infringed. In determining the appropriate amount to award, you may consider the following factors:

- the expenses that Defendant saved and the profits that he earned because of the infringement;

- the revenues that Plaintiff, QueTel, lost because of the infringement;

- the difficulty of proving Plaintiff's actual damages;

- the circumstances of the infringement; and

- deterrence of future infringement.

If Plaintiff, QueTel, proves that Defendant willfully infringed Plaintiff's copyright, then you may, but are not required to, increase the statutory damage award to a sum as high as $150,000 per copyrighted work. Infringement is considered willful if Plaintiff, QueTel, proves that Defendant knew that his actions constituted infringement of Plaintiff's copyright or acted with reckless disregard of Plaintiff's copyright.

2

**AGREED INSTRUCTION NO. 21**
**Willful: Defined for Purposes of Copyright Infringement**

"Willful" means defendants Hisham Abbas, Shorouk Mansour, and Final Cover, LLC

had knowledge that their actions constituted copyright infringement.

### AGREED INSTRUCTION NO. 22
### Copyright Infringement: Damages Generally

If you find QueTel had a valid copyright and you find the copyright was infringed by one or more Defendants – Hisham Abbas, Shorouk Mansour and/or finalcover, LLC, you should find for QueTel. You must then decide on the amount of damages QueTel is entitled to recover.

Basically, the law allows a successful plaintiff to recover the actual damages suffered by QueTel as a result of the infringement, including unrecovered costs and lost profits, and also any profits of Defendants attributable to the infringement that you have not already taken into account or properly covered in figuring QuTel's lost profits.

Defendants' profits consist of the amount of money Defendants have made due to the infringement, after deducting evidence of their expenses in producing and marketing the infringing work.

QueTel is not necessarily entitled to all of Defendants' profits, but only to the part of their profits due to the infringement. If Defendants' work was profitable for reasons that had nothing to do with Defendants' infringement of QueTel's work, then the QueTel is not entitled to recover the Defendants' profits, because they did not result from the infringement.

If you reach that point, you must decide to what extent Defendants' sales and profits were attributable to copyright infringement, and whether QueTel is entitled to all of Defendants' profits, or none of the defendant's profits, or something in between.

Profits are determined by deducting all expenses from gross revenue.  Gross revenue is all of defendant's receipts from the use or sale of a work containing or using the copyrighted work. Expenses are all operating or overheard and production costs incurred in producing the gross revenue.

Unless you find that a portion of the profit from the use or sale of a product or work containing or using the copyrighted work is attributable to factors other than use of the copyrighted work, the total profit is attributable to the infringement.

QueTel has the burden of proving gross revenue by a preponderance of the evidence. Defendants have the burden of proving the expenses and the portion of the profits attributable to factors other than the copyrighted work by a preponderance of the evidence.

**AGREED INSTRUCTION NO. 23**
**Trade Secret Misappropriation: Misappropriation Defined**

"Misappropriation" means:

1. Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

2. Disclosure or use of a trade secret of another without express or implied consent by a person who:

      a. Used improper means to acquire knowledge of the trade secret; or

      b. At the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:

      (1) Derived from or through a person who had utilized improper means to acquire it;

      (2) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use;

      (3) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

      (4) Acquired by accident or mistake.

**AGREED INSTRUCTION NO. 24**
**Trade Secret Misappropriation:  Improper Means Defined**

"Improper means" includes theft, bribery, misrepresentation, use of a computer or computer network without authority, or breach of a duty or inducement of a breach of a duty to maintain secrecy.

**AGERED INSTRUCTION NO. 25**
**Virginia Computer Crimes Act: Elements**

Plaintiff QueTel Corporation has also alleged that one or more of the Defendants violated the Virginia Computer Crimes Act ("VCCA") by committing Computer Trespass.  Under the VCCA's Computer Trespass statute, it is unlawful for any person to remove any computer data, computer programs or computer software from a computer or computer network, or to use a computer or computer network to make or cause to be made an unauthorized copy, in any form, of computer programs or computer software residing in, communicated by, or produced by a computer or computer network.

**AGREED INSTRUCTION NO. 26**
**Virginia Computer Crimes Act: Definitions**

Under the VCCA, a "computer" is defined as a device that accepts information in digital or similar form and manipulates it for a result based on a sequence of instructions. However, it does not include simple calculators, automated typewriters, facsimile machines, or any other specialized computing devices that are preprogrammed to perform a narrow range of functions with minimal end-user or operator intervention and are dedicated to a specific task.

A "computer program" is defined as an ordered set of data representing coded instructions or statements that, when executed by a computer, causes the computer to perform one or more computer operations.

"Computer Software" is defined as a set of computer programs, procedures and associated documentation concerned with computer data or with the operation of a computer, computer program, or computer network.

"Computer data" is defined as any representation of information, knowledge, facts, concepts, or instructions which is being prepared or has been prepared and is intended to be processed, is being processed, or has been processed in a computer or computer network. "Computer data" may be in any form, whether readable only by a computer or only by a human or by either, including, but not limited to, computer printouts, magnetic storage media, punched cards, or stored internally in the memory of the computer.

A "computer network" is defined as two or more computers connected by a network.

A "network" is defined as any combination of digital transmission facilities and packet switches, routers, and similar equipment interconnected to enable the exchange of computer data.

**AGREED INSTRUCTION NO. 27**
**Definition of Contract**

Plaintiff QueTel Corporation has also sued Mr. Abbas for breach of his employment contract with QueTel.

A contract is an agreement, for consideration, between two or more parties. A contract arises when an offer is accepted.

**AGREED INSTRUCTION NO. 28**
**Material Breach of Contract**

A material breach of contract occurs if a party fails to do something which he is bound to do according to the contract which is so important and central to the contract that the failure defeats the very purpose of the contract.

**AGREED INSTRUCTION NO. 29**
**Contract Must Be Complete and Reasonably Certain**

A contract must be both complete and reasonably certain. It is complete if it includes all the essential terms. It is reasonably certain if all the essential terms are expressed in a clear and definite way.

**AGREED INSTRUCTION NO. 30**
**Contract Intent**

Interpretation of a contract is primarily a determination of what the parties intended. In determining their intent, you should first consider the words they used. The words should be given their plain and ordinary meaning unless an obviously different meaning is apparent. You may also consider the subject matter of the contract, the situation of the parties, the purpose of the parties in making the contract, and the surrounding circumstances.

**AGREED INSTRUCTION NO. 31**
**Construction Against the Drafter**

In interpreting a contract, you should resolve any doubts about the meaning of a word or phrase against the party who prepared the contract.

**AGREED INSTRUCTION NO. 32**
**Breach of Contract Damages: Direct**

If you find that Mr. Abbas breached his employment agreement with QueTel, then QueTel

is entitled to recover as damages all of the losses it sustained, including gains prevented, that are

a natural and ordinary result of the breach.

**AGREED INSTRUCTION NO. 33**
**Damages:  Reasonable Proof**

With respect to QueTel's claims for damages, the burden is on QueTel to prove by the greater weight of the evidence that he sustained damages. It is not required to prove the exact amount of its damages, but it must show sufficient facts and circumstances to permit you to make a reasonable estimate of them.

**AGREED INSTRUCTION NO. 34**
**Business Conspiracy: Elements**

QueTel has also alleged that Defendants engaged in a conspiracy in violation of Virginia law to harm QueTel' business interests.  You shall find your verdict for the plaintiff if plaintiff has proven by clear and convincing evidence:

(1)     That two or more of the Defendants – finalcover, Mr. Abbas, and Ms. Mansour – acted in concert, agreed, associated, mutually undertook or combined together;

(2)     That they intentionally, purposefully, and without lawful justification injured the QueTel's reputation, trade business or profession; and

(3)     That QueTel suffered damages as a result of Defendants' acts.

You shall find your verdict for the defendant if the plaintiff failed to prove any one or more of these elements.

**AGREED INSTRUCTION NO. 35**
**Punitive Damages**

If you find that QueTel is entitled to be compensated for its damages on Counts II, III, V, VI, VII and/or VIII, and if you further believe by the greater weight of the evidence that the Defendants who are liable under such counts acted with actual malice toward QueTel or acted under circumstances amounting to a willful and wanton disregard of QueTel's rights, then you may also award punitive damages to QueTel punish such Defendants for their actions and to serve as an example to deter the Defendants and others from acting in a similar way.  Actual malice is a sinister or corrupt motive such as hatred, personal spite, ill will, or a desire to injure the plaintiff.

If you award punitive damages, you must state separately in your verdict the amount you allow as compensatory damages and the amount you allow as punitive damages.

**AGREED INSTRUCTION NO. 36**
**Effect of Refusal of Witness to Answer**

The law requires every witness to answer all proper questions put to the witness at trial, unless I rule the witness is privileged to refuse to answer on constitutional or other grounds.

The fact a witness refuses to answer a question after being instructed by me to answer it may be considered by the jury as one of the factors in determining the credibility of the witness and the weight his or her testimony deserves.

## AGREED INSTRUCTION NO. 37
### Discrepancies in Testimony

You are the sole judges of the credibility of the witnesses and the weight their testimony deserves. You may be guided by the appearance and conduct of a witness, or by the manner in which a witness testifies, or by the character of the testimony given, or by evidence contrary to the testimony.

You should carefully examine all the testimony given, the circumstances under which each witness has testified, and every matter in evidence tending to show whether a witness is worthy of belief. Consider each witness' intelligence, motive and state of mind, and demeanor or manner while testifying.

Consider the witness' ability to observe the matters as to which the witness has testified, and whether the witness impresses you as having an accurate recollection of these matters. Also, consider any relation each witness may have with either side of the case, the manner in which each witness might be affected by the verdict, and the extent to which the testimony of each witness is either supported or contradicted by other evidence in the case

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses may or may not cause you to discredit such testimony. Two or more persons seeing an event may see or hear it differently.

In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

After making your own judgment, you will give the testimony of each witness such weight, if any, that you may think it deserves. In short, you may accept or reject the testimony of any witness, in whole or in part.

In addition, the weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or nonexistence of any fact. You may find that the testimony of a small number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

**AGREED INSTRUCTION NO. 38**
**Answers to Interrogatories**

Each party has introduced into evidence certain interrogatories—that is, questions together with answers signed and sworn to by the other party. A party is bound by its sworn answers.

By introducing an opposing party's answers to interrogatories, the introducing party does not bind itself to those answers. The introducing party may challenge the opposing party's answers in whole or in part or may offer contrary evidence.

**AGREED INSTRUCTION NO. 39**
**Number of Witnesses**

The weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or nonexistence of any fact. You may find the testimony of a small number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

You are not bound to decide any issue of fact in accordance with the testimony of any number of witnesses that does not produce in your minds belief in the likelihood of truth, as against the testimony of a lesser number of witnesses or other evidence producing such belief in your minds.

The test is not which side brings the greater number of witnesses or takes the most time to present its evidence, but which witnesses and which evidence appeal to your minds as being most accurate and otherwise trustworthy.

**AGREED INSTRUCTION NO. 40**
**Charts and Summaries**

Charts and summaries have been shown to you in order to help explain facts disclosed by books, records, and other documents in evidence in the case. These charts or summaries are not themselves evidence or proof of any facts. If the charts or summaries do not correctly reflect facts or figures shown by the evidence in the case, you should disregard them.

The charts and summaries are used only as a matter of convenience. To the extent that you find they are not truthful summaries of facts or figures shown by the evidence in the case, you are to disregard them entirely.

100

**AGREED INSTRUCTION NO. 41**
**Statistics**

Statistics should be considered with care. They are not irrefutable, and, like any other kind of evidence, they may be rebutted.

**AGREED INSTRUCTION NO. 42**
**Evidence Admitted for a Limited Purpose Only**

Sometimes evidence may be admitted concerning only a particular party or only for a particular purpose and not generally against all parties or for all purposes. For the limited purpose for which this evidence has been received you may give it such weight as you feel it deserves. You may not, however, use this evidence for any other purpose or against any party not specifically mentioned.

**AGREED INSTRUCTION NO. 43**
**Inferences**

You are to consider only the evidence in the case. However, you are not limited to the statements of the witnesses.   You may draw from the facts you find have been proved such reasonable inferences as seem justified in light of your experience.

"Inferences" are deductions or conclusions that reason and common sense lead you to draw from facts established by the evidence in the case.

**AGREED INSTRUCTION NO. 44**
**Duty to Deliberate**

The verdict must represent the considered judgment of each of you. In order to return a verdict, it is necessary that each juror agree. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another, and to deliberate with a view to reaching an agreement, if you can do so without disregard of individual judgment. You must each decide the case for yourself, but only after an impartial consideration of the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate     to reexamine your own views, and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence, solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times that you are not partisans. You are judges—judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

**AGREED INSTRUCTION NO. 45**
**Rules for Deliberation**

You must follow the following rules while deliberating, reaching, and returning your verdict:

*First*, when you go to the jury room, you must select a foreperson. The foreperson will preside over your discussions and speak for you here in court.

*Second*, it is your duty, as jurors, to discuss this case with one another in the jury room and to try to reach agreement. Each of you must make your own conscientious decision, but only after you have considered all the evidence, discussed it fully with the other jurors, and listened to the views of the other jurors. Do not be afraid to change your opinions if the discussion persuades you that you should. But do not make a decision simply because other jurors think it is right, or simply to reach a verdict.  Remember at all times you are the judges of the facts. Your sole interest is to seek the truth from the evidence in this case.

*Third*, if you need to communicate with me during your deliberations, you may send a note to me through the marshal or bailiff, signed by your foreperson.  I will respond as soon as possible either in writing or orally in open court. Remember that you should not tell anyone, including me, how your votes stand numerically.

*Fourth*, your verdicts must be based solely on the evidence and on the law that I have given to you in my instructions.  Nothing I have said or done is intended to suggest what your verdicts should be; that is entirely for you to decide.

*Finally*, the verdict forms and any special interrogatories are simply the written notice of the decisions that you reach in this case. You will take these forms to the jury room, and when each of you has agreed on the verdicts, your foreperson will fill in the forms, sign and date them, and advise the marshal or bailiff that you are ready to return to the courtroom.