# UNITED STATES DISTRICT COURT FOR
# THE EASTERN DISTRICT OF VIRGINIA
### (Alexandria Division)

|  |  |  |
|---|---|---|
| QUETEL CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:17-CV-00471 (AJT-JFA) |
| | ) | |
| HISHAM ABBAS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF QUETEL CORPORATION'S
## PROPOSED JURY INSTRUCTIONS REMAINING IN DISPUTE

Plaintiff QueTel Corporation ("QueTel"), by counsel, respectfully submits the following

proposed jury instructions that are not completely agreed between the parties, with and without

citations.

QueTel reserves the right to add to or amend the below instructions based on submissions

by Defendants, rulings of the Court and/or as may otherwise be agreed upon or allowed.  In

particular, QueTel reserves the right to submit instructions stating the nature of the case or

otherwise framing the questions presented upon the conclusion of the evidence.

Dated:  January 17, 2018

Respectfully submitted,

QUETEL CORPORATION,
By counsel

/s/ Patrick J. McDonald
Timothy J. McEvoy, Esq. (VSB No. 33277)
Matthew H. Sorensen, Esq. (
Patrick J. McDonald, Esq. (VSB No. 80678)
CAMERON/MCEVOY PLLC
4100 Monument Corner Drive, Suite 420
Fairfax, Virginia 22030
703-273-8898 (Office)
703-273-8897 (Fax)
tmcevoy@cameronmcevoy.com
msorensen@cameronmcevoy.com
pmcdonald@cameronmcevoy.com
*Counsel for Plaintiff QueTel Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 17th day of January, 2018, I filed the foregoing using the Court's CM/ECF system, which will send notice of electronic filing through the Court's electronic filing system to all counsel of record.


/s/ Patrick J. McDonald
Patrick J. McDonald, Esq. (VSB No. 80678)
*Counsel for Plaintiff QueTel Corporation*

**QUETEL PROPOSED JURY INSTRUCTIONS
THAT REMAIN IN DISPUTE**

**WITH CITATIONS**

**INSTRUCTION A**
**Pre-Evidence Statement of the Case[1]**
**(To be read before opening statements)**

In this case, Plaintiff QueTel Corporation alleges that Defendants Hisham Abbas, Shorouk Mansour and finalcover, LLC, infringed upon a copyright QueTel owns for its source code for suit of computer program known as TraQ Suite 6.  Plaintiff alleges that TraQ Suite 6 is an integrated software package that helps law enforcement agencies digitally track evidence and related matters.  QueTel further alleges that Defendants misappropriated its trade secrets in violation of the Virginia Uniform Trade Secrets Act, violated the Virginia Computer Crimes Act, converted TraQ Suite 6, and conspired together to do these actions.  QueTel also alleges that Mr. Abbas breached his employment agreement with QueTel and his duty of loyalty to QueTel when he misappropriated TraQ Suite 6's source code.  Finally, QueTel alleges that Abbas and finalcover tortiously interfered with QueTel's business expectancies and contracts.

Defendants deny these allegations and have asserted the following defenses: (1) QueTel's claims are barred by the applicable statutes of limitations; (2) QueTel's claims are barred by the doctrine of laches; (3) there was no interference with contracts; (4) QueTel has waived its claims; (5) there was no contract between Mr. Abbas and QueTel; (6) QueTel's alleged trade secret is not a trade secret and QueTel has not taken the necessary steps to maintain its secrecy; (7) QueTel's claims are barred by the use of what is known as "open source code;" (8) QueTel's damages clams are speculative, and (9) QueTel's claims are barred by the doctrine of election of remedies.

---

[1] 3C Fed. Jury Prac. & Instr. § 178:1 (6th ed.) (Modified).

## INSTRUCTION B
### Witnesses[2]

In deciding the facts, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, part of it, or none of it.  In considering the testimony of any witness, you may take into account many factors, including the witness's opportunity and ability to see or hear or know the things the witness testified about; the quality of the witness's memory; the witness's appearance and manner while testifying; the witness's interest in the outcome of the case; any bias or prejudice the witness may have; other evidence that may have contradicted the witness's testimony; and the reasonableness of the witness's testimony in light of all the evidence. The weight of the evidence does not necessarily depend upon on the number of witnesses who testify. You are entitled to use your common sense in judging any testimony. From these things and all the other circumstances of the case, you may determine which witnesses are more believable and weigh their testimony accordingly.

---

[2] 3C Fed. Jury Prac. & Instr. § 101:43 (6th ed.); Virginia Model Jury Instr.-Civil § 2.020 (2008 ed.).

**INSTRUCTION C**
**Prior Inconsistent Statement[3]**

You have heard evidence that at some earlier time, a witness has said or done something which counsel argues is inconsistent with the witness's trial testimony.

Evidence of a prior inconsistent statement is not to be considered by you as affirmative evidence in determining liability. Evidence of a prior inconsistent statement was placed before you for the limited purpose of helping you to decide whether to believe the trial testimony of the witness who contradicted him- or herself. If you find that the witness made the earlier statement that conflicts with his or her trial testimony, you may consider that fact in deciding how much of his trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency, and whether that explanation appealed to your common sense.

It is exclusively your duty, based upon all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so how much, if any, weight to give to the inconsistent statement in determining whether to believe all or part of the witness's testimony.

---

[3] 4 Sand, et al., Modern Fed. Jury Instructions-Civil Instr. 76-5 (Modified); Seventh Circuit Model Civil Jury Instr. 1.14 (Modified).

## INSTRUCTION D
## Expert Witnesses[4]

In this case, I have permitted certain expert witnesses to express their opinions about matters that are in issue. A witness may be permitted to testify or opine on those matters about which he has special knowledge, skill, experience, and training. Such testimony is presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding or reaching an independent decision on the facts.

In weighing expert testimony, you may consider the witness's qualifications, opinions, and reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony. You may give the opinion testimony whatever weight, if any, you find it deserves in light of all the evidence in this case. You should not, however, accept opinion testimony merely because I allowed the witness to give his opinion. Nor should you substitute expert testimony for your own reason, judgment, and common sense. The determination of the facts in this case rests solely with you.

The expert witnesses that testified in this case were: Monty G. Myers and Paul D. Sheriff; No party was an expert in this case.

---

[4] 3C Fed. Jury Prac. & Instr. § 104.50 (6th ed.)(Modified)

## INSTRUCTION E
## Demonstratives[5]

Certain demonstrative aids, diagrams, charts, and summaries have been shown to you as a matter of convenience in order to help explain certain facts.  These aids, diagrams, charts, and summaries are not evidence.  If they do not correctly reflect the facts or figures shown by the evidence in the case, or are otherwise not truthful summaries, you should disregard them to the extent you deem them inaccurate.

---

[5] Third Circuit Model Civil Jury Instr. 2.8 (Modified); Seventh Circuit Pattern Civil Jury Instr. 1.24 (Modified).

### INSTRUCTION F
### Copyright Infringement[6]

Subject to certain defenses, one who reproduces, prepares derivative works, distributes, performs or displays a copyrighted work during the term of the copyright, infringes a copyright, unless licensed by the copyright owner.

To prove that Defendants infringed QueTel's copyright, QueTel may show either direct evidence of copying, or indirect evidence of copying.

Direct evidence of copying includes evidence such as party admissions, witness accounts of the physical act of copying, and common errors in the works of QueTel and the Defendants.

Indirect evidence of copying includes evidence that one or more Defendants had access to QueTel's copyrighted work and that there are substantial similarities between the Defendants' work and the QueTel's work.  Substantial similarity is a two-pronged test.  To prove substantial similarity, QueTel must show that the two works are (1) extrinsically similar because they contain substantially similar ideas   that   are   subject   to copyright protection   and   (2) intrinsically similar in the sense that they express those ideas in a substantially similar manner from the perspective of the intended audience of the work.

In this case, QueTel alleges that Defendants copied TraQ Suite 6's source code without authorization and used it to create a competing product, CaseGuard.  If you find that one or more Defendants copied TraQ Suite 6's source code in the development of CaseGuard, you shall find that such Defendant or Defendants infringed upon QueTel's copyright.  If you find that one or more Defendants did not copy TraQ Suite 6's source code, then with respect to the claim of

---

[6] 3B Fed. Jury Prac. & Instr. § 160:20 (6th ed.) (Modified); *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 537 (4th Cir. 2015), *as amended* (June 24, 2015) (internal citation omitted); *Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 435 (4th Cir. 2010), *as amended* (Aug. 24, 2010).

copyright infringement you shall find against those Defendants who did copy and in favor of those Defendants who did not.

**INSTRUCTION G**
**Trade Secret Misappropriation: Elements[7]**

QueTel has also brought a claim for the misappropriation of its trade secrets under the Virginia Uniform Trade Secrets Act ("Virginia Act").   In order to establish that certain information has been the subject of a trade-secret violation under Virginia law, a plaintiff must prove two statutory elements: (1) the existence of a "trade secret"; and (2) the "misappropriation" of that trade secret by the defendant.

---

[7] *Trident Prod. & Servs., LLC v. Canadian Soiless Wholesale, Ltd.,* 859 F. Supp. 2d 771, 778 (E.D. Va. 2012), *aff'd,* 505 F. App'x 242 (4th Cir. 2013) (quoting *MicroStrategy, Inc. v. Li,* 268 Va. 249, 263, 601 S.E.2d 580, 588 (Va. 2004)); *see also* Virginia Code §§ 59.1-336-38.

**INSTRUCTION H**
**Trade Secret Misappropriation: Trade Secret Defined[8]**

"Trade secret" means information, including but not limited to, a formula, pattern, compilation, program, device, method, technique, or process, that:

1. Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and

2. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Absolute secrecy is not required to establish the existence of a trade secret. Thus, the owner of a trade secret will not lose protection of the law by disclosing the secret to a licensee, an employee, or others, provided that the disclosure is made in express or implied confidence.

Depending on the facts of a particular case, software components, including parts of a computer program, may be trade secrets covered by the Virginia Act.

---

[8] Va. Code § 59.1-336; *MicroStrategy Inc. v. Li*, 268 Va. 249, 263, 601 S.E.2d 580, 588 (2004).

**INSTRUCTION I**
**Trade Secret Misappropriation:  Compensatory Damages[9]**

If you find that QueTel's source code for TraQ Suite 6 is a trade secret and that one or more Defendants misappropriated it, then QueTel is entitled to recover compensatory damages suffered as a result of the misappropriation.  Compensatory damages may include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss.

QueTel is not required to prove the amount of its damages with mathematical precision; rather, it was only required to produce sufficient facts and circumstances that would permit a trier of fact to make an intelligent and reasonable estimate of the amount.

---

[9] Va. Code § 59.1-338(A); VMJI No. 45.510 (modified).

**INSTRUCTION J**
**Trade Secret Misappropriation: Punitive Damages[10]**

If you find that Defendants' misappropriation of QueTel's source code for TraQ Suite 6 was willful and malicious, you may award punitive damages to QueTel against Defendants in an amount not exceed twice any award of compensatory damages, or $350,000.00, whichever is less.

---

[10] Va. Code § 59.1-338(B).

**INSTRUCTION K**
**Virginia Computer Crimes Act: Damages[11]**

If you find that one or more Defendants committed a Computer Trespass against QueTel, QueTel is entitled to an award of damages that resulted from the trespass, including any lost profits. Under the VCCA's Computer Trespass statute, it is unlawful for any person to remove any computer data, computer programs or computer software from a computer or computer network, or to use a computer or computer network to make or cause to be made an unauthorized copy, in any form, of computer programs or computer software residing in, communicated by, or produced by a computer or computer network.  QueTel is not required to prove the amount of its damages with mathematical precision; rather, it was only required to produce sufficient facts and circumstances that would permit a trier of fact to make an intelligent and reasonable estimate of the amount.

---

[11] Va. Code § 18.2-152.4; VMJI No. 45.510 (modified).

## INSTRUCTION L
### Breach of Duty of Loyalty: Elements[12]

Plaintiff QueTel corporation has also alleged that Abbas has breached his duty of loyalty as an employee of QueTel. An employee, including an employee-at-will, owes a fiduciary duty of loyalty to his employer during his employment. Subsumed within this general duty of loyalty is the more specific duty that the employee not compete with his employer during his employment. An employee violates his or her duty of loyalty when he or she misappropriates trade secrets, misuses confidential information, or solicits an employer's clients or other employees prior to termination of employment. Further, an employee has a duty of loyalty, fidelity and responsibility to his employer not to remove documents and materials of a confidential and secret nature from his employer's possession and to transmit the same to a competitor for use by such competitor to their unjust enrichment and damage to the employer. The duty to be faithful does not cease when the employment ends. He or she has a duty not to reveal confidential information obtained through his employment, and not to use such confidential information after he has left his employment.

---

[12] *Williams v. Dominion Tech. Partners, L.L.C.*, 265 Va. 280, 289-91, 576 S.E.2d 752, 757-58 (2003); *Can-Do, Inc. v. Galloway*, No. G-7737-1., 1982 WL 215314, at *15 (Va. Cir. Ct. Dec. 28, 1982) (citing *Sperry Rand Corp. v. Electronic Concepts, Inc.*, 325 F. Supp. 1209, 1218, (E.D. Va. 1970), *vacated and remanded on other grounds*, 447 F.2d 1387 (4th Cir. 1997); *Bull v. Logetronics, Inc.*, 323 F. Supp. 115, 133 (E.D. Va. 1971) (internal citation omitted); *see also Community Counselling Service v. Reilly*, 317 F.2d 239, 244 (4th Cir. 1963).

**INSTRUCTION M**
**Breach of Duty of Loyalty: Damages[13]**

If you find that QueTel has proven that Mr. Abbas breached his duty of loyalty to QueTel

by a preponderance of the evidence, then QueTel is entitled to an award of damages against Mr.

Abbas.   Damages for a breach of the duty of loyalty of an employee may be compensatory or

punitive or both.   As to compensatory damages, QueTel is s entitled to what it would have

received "but for" the breach of fiduciary duty, including lost profits.   QueTel is not required to

prove the amount of its damages with mathematical precision; rather, it was only required to

produce sufficient facts and circumstances that would permit a trier of fact to make an intelligent

and reasonable estimate of the amount.

---

[13] *RitLabs, S.R.L. v. RitLabs, Inc.*, No. 1:12-CV-215 AJT/IDD, 2012 WL 6021328, at *7 (E.D. Va. Nov. 30, 2012) (citing *Flippo v. CSC Associates III, LLC*, 262 Va. 48 (2001) (awarding both compensatory and punitive damages); VMJI No. 45.510 (modified).

**INSTRUCTION N**
**Damages: Purpose of Contract Damages[14]**

The objective in breach of contract damages is to put the injured party, so far as can be done by money, in the same position as if the contract had been performed.

---

[14] *Lehigh Portland Cement Co. v. Virginia S.S. Co.*, 132 Va.257, 270, 111 S.E. 104, 109 (1922); *see also* VMJI 45.500 Practice Commentary.

**INSTRUCTION O**
**Tortious Interference with Contract and Business Expectancy: Elements[15]**

Plaintiff QueTel has also alleged that Defendant finalcover, LLC, tortiously interfered with QueTel's employment agreement with Mr. Abbas, and that Mr. Abbas and finalcover tortiously interfered with QueTel's business relationships with its actual and prospective customers.  You shall find your verdict for QueTel on these claims if you find that QueTel has proven, by a preponderance of the evidence, the following:

(1)    that there was a contract expectancy prospective business relationship, or contract between QueTel and Mr. Abbas and/or a third party; and

(2)    that the defendant in question knew of this contract expectancy, prospective business relationship, or contract; and

(3)    that the defendant in question used improper methods to interfere with the contract expectancy, prospective business relationship, or contract; and

(4)    that the defendant in question intended to interfere with the contract expectancy, prospective business relationship, or contract; and

(5)    that it was reasonably certain that the business relationship would have continued or the expectancy would have been realized in the absence of the defendants' conduct; and

(6)    that QueTel was damaged by the disruption of the contract expectancy, business relationship or contract.

You shall find your verdict for the defendant if the plaintiff failed to prove any one or more of these elements; or if you find that the defendant proved by the greater weight of the evidence that the interference was justified, privileged or not improper.

_____

[15] VMJI 40.250 (Modified).

### INSTRUCTION P
### Tortious Interference Defined[16]

"Tortious interference" means only that the interference was intentional and improper under the circumstances, not that the "improper methods" used were inherently illegal or tortious.  Methods of interference considered improper are those means that are illegal or independently tortious, such as violations of statutes, regulations, or recognized common-law rules.  Improper methods may include, among other things, fraud, misrepresentation or deceit, misuse of inside or confidential information, or breach of a fiduciary relationship.  Methods also may be improper because they violate an established standard of a trade or profession, or involve unethical conduct.

---

[16] *Maximus, Inc. v. Lockheed Info. Mgmt. Sys. Co.*, 254 Va. 408, 414, 493 S.E.2d 375, 379 (1997); *Duggin v. Adams*, 234 Va. 221, 227, 360 S.E.2d 832, 836 (1987)

**INSTRUCTION Q**
**Tortious Interference with Contract and Business Expectancy: Damages[17]**

If you find that finalcover and/or Mr. Abbas tortiously interfered with QueTel's contract

expectancies, prospective business relationships or contracts, then QueTel is entitled to damages

in the amount of the present value of lost profits resulting from the defendant's actions.  In order

to recover lost profits, QueTel is not required to prove the amount of its damages with

mathematical precision; rather, it was only required to produce sufficient facts and circumstances

that would permit a trier of fact to make an intelligent and reasonable estimate of the amount.

---

[17] *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Corp.*, 65 F.3d 1113, 1124 (4th Cir. 1995) (citing *Commercial Business Systems v. BellSouth Servs.*, 249 Va. 39, 453 S.E.2d 261, 268 (1995)); VMJI No. 45.510 (modified).

**INSTRUCTION R**
**Conversion: Elements[18]**

QueTel has also alleged that Defendants committed the tort of conversion. In order to prove that one or more Defendants converted QueTel's property, QueTel must show that one or more Defendants wrongfully exercised control or assumed authority over property belonging to QueTel.  If QueTel demonstrates that by a preponderance of the evidence, your verdict should be for QueTel on its claim of conversion.

QueTel is entitled to recover damages for converted property irrespective of whether the Defendants acted in good or bad faith, with care or negligence, or with knowledge or from ignorance, in converting the property.

---

[18] *Hartzell Fan, Inc. v. Waco, Inc.,* 505 S.E.2d 196, 201 (Va. 1998); *Universal C.I.T. Credit Corp. v. Kaplan*, 198 Va. 67, 76 92 S.E.2d 359, 365 (Va. 1956) ("irrespective"); *United Leasing Corp. v. Thrift Insur. Corp,* 247 Va. 299, 205 (1994) (any wrongful dominion); *PGI, Inc. v. Rathe Productions, Inc.,* 265 Va. 334 (2003).

**INSTRUCTION S**
**Conversion: Damages[19]**

If you find for QueTel on its claim of conversion, QueTel is entitled to a damages award in an amount equal to the fair market value of the property converted as of approximately April 24, 2014, the date of Mr. Abbas's resignation from QueTel. You may consider evidence of value a reasonable time prior and subsequent to the conversion in determining an award of damages for conversion.   QueTel is not required to prove the amount of its damages with mathematical precision; rather, it was only required to produce sufficient facts and circumstances that would permit a trier of fact to make an intelligent and reasonable estimate of the amount.

---

[19] *Mazi v. Gilley*, 44 Va. Cir. 322 (1998) (citing *Straley v. Fisher*, 176 Va. 163 (1940); *Haynes v. Glenn*, 197 Va. 746 (1956); *DPR Inc. of Virginia v. Dinsmore*, 82 Va. Cir. 451 (2011), *opinion adopted sub nom. D.P.R Inc. of Virginia v. Dinsmore* (Va. Cir. Ct. May 6, 2011); VMJI No. 45.510 (modified).

**INSTRUCTION T**
**Business Conspiracy: Damages[20]**

If you find that two or more Defendants engaged in a conspiracy as described above, QueTel is entitled to recover damages resulting from Defendants' conspiracy, including, but not limited to, its lost profits. QueTel is not required to prove the amount of its damages with mathematical precision; rather, it was only required to produce sufficient facts and circumstances that would permit a trier of fact to make an intelligent and reasonable estimate of the amount.

---

[20] Va. Code § 18.2-500; VMJI No. 45.510 (modified).

**INSTRUCTION U**
**Finding Instructions on Destruction of Evidence[21]**

You are to take, as established, the following findings of fact made by the Court prior to trial:

(1)    Defendants received a Cease and Desist letter from counsel for QueTel on May 16, 2016.

(2)    That Cease and Desist Letter informed Defendants of the general basis for QueTel's claims in this litigation, and requested that Defendants preserve all evidence, including any computers used to develop their CaseGuard software.

(3)    As of May 16, 2016, Defendants were on notice of potential litigation and had a duty to preserve the computer or computers used to develop CaseGuard and information relating to the development of CaseGuard.

(4)    After receipt of the Cease and Desist Letter, Defendants destroyed a computer on which Mr. Abbas developed the source code for CaseGuard by erasing all data on its hard drive and then placing it in a commercial garbage receptacle.

(5)    By doing so, the Defendants failed to take reasonable steps to preserve it, and the information on that computer cannot be restored or replaced through additional discovery.

(6)    Furthermore, in July 2017, Defendants uninstalled what has been referred to in this litigation as a "source code control system" from a subsequent computer used by Mr. Abbas to develop CaseGuard's source code.

(7)    This deletion of the source code control system occurred just days before the defendants had the forensic image of the hard drives prepared for production to the plaintiff and was long after the issue of whether a source code control system had been used by the defendants

---

[21] Proposed Findings of Fact and Recommendations, ECF No. 58.

in the development of CaseGuard had been raised during discovery.

(8)     Also in July 2017, Defendants deleted thousands of CaseGuard-related files from the replacement computer, prior to turning over a forensic image of that device.

(9)     QueTel has been prejudiced by defendants' failure to preserve the computer, source code control system and thousands of CaseGuard-related files.

(10)     Defendants' destruction of the computer, source code control system and thousands of CaseGuard-related files was intentional.

(11)     Furthermore, Defendants failed to comply with an Order of this Court when they failed to image several computers used in the development of CaseGuard, and turn over such forensic images to QueTel for examination during discovery in this matter.

Based on the above, you are instructed as follows:

(1)     You must presume that the information on the computer used to develop CaseGuard that was destroyed by the defendants in late 2016 and the source code control system that had been on the replacement computer that was destroyed by the Defendants in July 2017 would have been unfavorable to the defendants when weighing the evidence in this case;

(2)     You may presume that the information contained in thousands of CaseGuard-related files that were deleted in July 2017 would have been unfavorable to the defendants when weighing the evidence in this case; and

(3)     You may take into consideration the fact that Defendants failed to comply with a Court Order to provide plaintiff with information relevant to its claims and the plaintiff was not given access to all the computers used by the defendants in developing CaseGuard.

# QUETEL PROPOSED JURY INSTRUCTIONS
# THAT REMAIN IN DISPUTE

# WITHOUT CITATIONS

**INSTRUCTION A**
**Pre-Evidence Statement of the Case**
**(To be read before opening statements)**

In this case, Plaintiff QueTel Corporation alleges that Defendants Hisham Abbas, Shorouk Mansour and finalcover, LLC, infringed upon a copyright QueTel owns for its source code for suit of computer program known as TraQ Suite 6. Plaintiff alleges that TraQ Suite 6 is an integrated software package that helps law enforcement agencies digitally track evidence and related matters. QueTel further alleges that Defendants misappropriated its trade secrets in violation of the Virginia Uniform Trade Secrets Act, violated the Virginia Computer Crimes Act, converted TraQ Suite 6, and conspired together to do these actions. QueTel also alleges that Mr. Abbas breached his employment agreement with QueTel and his duty of loyalty to QueTel when he misappropriated TraQ Suite 6's source code. Finally, QueTel alleges that Abbas and finalcover tortiously interfered with QueTel's business expectancies and contracts.

Defendants deny these allegations and have asserted the following defenses: (1) QueTel's claims are barred by the applicable statutes of limitations; (2) QueTel's claims are barred by the doctrine of laches; (3) there was no interference with contracts; (4) QueTel has waived its claims; (5) there was no contract between Mr. Abbas and QueTel; (6) QueTel's alleged trade secret is not a trade secret and QueTel has not taken the necessary steps to maintain its secrecy; (7) QueTel's claims are barred by the use of what is known as "open source code;" (8) QueTel's damages clams are speculative, and (9) QueTel's claims are barred by the doctrine of election of remedies.

**INSTRUCTION B**
**Witnesses**

In deciding the facts, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, part of it, or none of it.  In considering the testimony of any witness, you may take into account many factors, including the witness's opportunity and ability to see or hear or know the things the witness testified about; the quality of the witness's memory; the witness's appearance and manner while testifying; the witness's interest in the outcome of the case; any bias or prejudice the witness may have; other evidence that may have contradicted the witness's testimony; and the reasonableness of the witness's testimony in light of all the evidence. The weight of the evidence does not necessarily depend upon on the number of witnesses who testify. You are entitled to use your common sense in judging any testimony. From these things and all the other circumstances of the case, you may determine which witnesses are more believable and weigh their testimony accordingly.

## INSTRUCTION C
### Prior Inconsistent Statement

You have heard evidence that at some earlier time, a witness has said or done something which counsel argues is inconsistent with the witness's trial testimony.

Evidence of a prior inconsistent statement is not to be considered by you as affirmative evidence in determining liability. Evidence of a prior inconsistent statement was placed before you for the limited purpose of helping you to decide whether to believe the trial testimony of the witness who contradicted him- or herself. If you find that the witness made the earlier statement that conflicts with his or her trial testimony, you may consider that fact in deciding how much of his trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency, and whether that explanation appealed to your common sense.

It is exclusively your duty, based upon all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so how much, if any, weight to give to the inconsistent statement in determining whether to believe all or part of the witness's testimony.

## INSTRUCTION D
## Expert Witnesses

In this case, I have permitted certain expert witnesses to express their opinions about matters that are in issue. A witness may be permitted to testify or opine on those matters about which he has special knowledge, skill, experience, and training. Such testimony is presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding or reaching an independent decision on the facts.

In weighing expert testimony, you may consider the witness's qualifications, opinions, and reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony. You may give the opinion testimony whatever weight, if any, you find it deserves in light of all the evidence in this case. You should not, however, accept opinion testimony merely because I allowed the witness to give his opinion. Nor should you substitute expert testimony for your own reason, judgment, and common sense. The determination of the facts in this case rests solely with you.

The expert witnesses that testified in this case were: Monty G. Myers and Paul D. Sheriff; No party was an expert in this case.

**INSTRUCTION E**
**Demonstratives**

Certain demonstrative aids, diagrams, charts, and summaries have been shown to you as a matter of convenience in order to help explain certain facts.  These aids, diagrams, charts, and summaries are not evidence.  If they do not correctly reflect the facts or figures shown by the evidence in the case, or are otherwise not truthful summaries, you should disregard them to the extent you deem them inaccurate.

**INSTRUCTION F**
**Copyright Infringement**

Subject to certain defenses, one who reproduces, prepares derivative works, distributes, performs or displays a copyrighted work during the term of the copyright, infringes a copyright, unless licensed by the copyright owner.

To prove that Defendants infringed QueTel's copyright, QueTel may show either direct evidence of copying, or indirect evidence of copying.

Direct evidence of copying includes evidence such as party admissions, witness accounts of the physical act of copying, and common errors in the works of QueTel and the Defendants.

Indirect evidence of copying includes evidence that one or more Defendants had access to QueTel's copyrighted work and that there are substantial similarities between the Defendants' work and the QueTel's work. Substantial similarity is a two-pronged test. To prove substantial similarity, QueTel must show that the two works are (1) extrinsically similar because they contain substantially similar ideas that are subject to copyright protection and (2) intrinsically similar in the sense that they express those ideas in a substantially similar manner from the perspective of the intended audience of the work.

In this case, QueTel alleges that Defendants copied TraQ Suite 6's source code without authorization and used it to create a competing product, CaseGuard. If you find that one or more Defendants copied TraQ Suite 6's source code in the development of CaseGuard, you shall find that such Defendant or Defendants infringed upon QueTel's copyright. If you find that one or more Defendants did not copy TraQ Suite 6's source code, then with respect to the claim of copyright infringement you shall find against those Defendants who did copy and in favor of those Defendants who did not.

**INSTRUCTION G**
**Trade Secret Misappropriation: Elements**

QueTel has also brought a claim for the misappropriation of its trade secrets under the Virginia Uniform Trade Secrets Act ("Virginia Act").   In order to establish that certain information has been the subject of a trade-secret violation under Virginia law, a plaintiff must prove two statutory elements: (1) the existence of a "trade secret"; and (2) the "misappropriation" of that trade secret by the defendant.

**INSTRUCTION H**
**Trade Secret Misappropriation: Trade Secret Defined**

"Trade secret" means information, including but not limited to, a formula, pattern, compilation, program, device, method, technique, or process, that:

1. Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and

2. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Absolute secrecy is not required to establish the existence of a trade secret. Thus, the owner of a trade secret will not lose protection of the law by disclosing the secret to a licensee, an employee, or others, provided that the disclosure is made in express or implied confidence.

Depending on the facts of a particular case, software components, including parts of a computer program, may be trade secrets covered by the Virginia Act.

**INSTRUCTION I**
**Trade Secret Misappropriation:  Compensatory Damages**

If you find that QueTel's source code for TraQ Suite 6 is a trade secret and that one or more Defendants misappropriated it, then QueTel is entitled to recover compensatory damages suffered as a result of the misappropriation.  Compensatory damages may include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss.

QueTel is not required to prove the amount of its damages with mathematical precision; rather, it was only required to produce sufficient facts and circumstances that would permit a trier of fact to make an intelligent and reasonable estimate of the amount.

**INSTRUCTION J**
**Trade Secret Misappropriation: Punitive Damages**

If you find that Defendants' misappropriation of QueTel's source code for TraQ Suite 6 was willful and malicious, you may award punitive damages to QueTel against Defendants in an amount not exceed twice any award of compensatory damages, or $350,000.00, whichever is less.

**INSTRUCTION K**
**Virginia Computer Crimes Act: Damages**

If you find that one or more Defendants committed a Computer Trespass against QueTel,

QueTel is entitled to an award of damages that resulted from the trespass, including any lost

profits. Under the VCCA's Computer Trespass statute, it is unlawful for any person to remove

any computer data, computer programs or computer software from a computer or computer

network, or to use a computer or computer network to make or cause to be made an unauthorized

copy, in any form, of computer programs or computer software residing in, communicated by, or

produced by a computer or computer network.  QueTel is not required to prove the amount of

its damages with mathematical precision; rather, it was only required to produce sufficient facts

and circumstances that would permit a trier of fact to make an intelligent and reasonable

estimate of the amount.

**INSTRUCTION L**
**Breach of Duty of Loyalty: Elements**

Plaintiff QueTel corporation has also alleged that Abbas has breached his duty of loyalty as an employee of QueTel. An employee, including an employee-at-will, owes a fiduciary duty of loyalty to his employer during his employment. Subsumed within this general duty of loyalty is the more specific duty that the employee not compete with his employer during his employment. An employee violates his or her duty of loyalty when he or she misappropriates trade secrets, misuses confidential information, or solicits an employer's clients or other employees prior to termination of employment. Further, an employee has a duty of loyalty, fidelity and responsibility to his employer not to remove documents and materials of a confidential and secret nature from his employer's possession and to transmit the same to a competitor for use by such competitor to their unjust enrichment and damage to the employer. The duty to be faithful does not cease when the employment ends. He or she has a duty not to reveal confidential information obtained through his employment, and not to use such confidential information after he has left his employment.

**INSTRUCTION M**
**Breach of Duty of Loyalty: Damages**

If you find that QueTel has proven that Mr. Abbas breached his duty of loyalty to QueTel by a preponderance of the evidence, then QueTel is entitled to an award of damages against Mr. Abbas.   Damages for a breach of the duty of loyalty of an employee may be compensatory or punitive or both.   As to compensatory damages, QueTel is s entitled to what it would have received "but for" the breach of fiduciary duty, including lost profits.   QueTel is not required to prove the amount of its damages with mathematical precision; rather, it was only required to produce sufficient facts and circumstances that would permit a trier of fact to make an intelligent and reasonable estimate of the amount.

**INSTRUCTION N**
**Damages: Purpose of Contract Damages**

The objective in breach of contract damages is to put the injured party, so far as can be done by money, in the same position as if the contract had been performed.

### INSTRUCTION O
### Tortious Interference with Contract and Business Expectancy: Elements

Plaintiff QueTel has also alleged that Defendant finalcover, LLC, tortiously interfered with QueTel's employment agreement with Mr. Abbas, and that Mr. Abbas and finalcover tortiously interfered with QueTel's business relationships with its actual and prospective customers.  You shall find your verdict for QueTel on these claims if you find that QueTel has proven, by a preponderance of the evidence, the following:

(1)   that there was a contract expectancy prospective business relationship, or contract between QueTel and Mr. Abbas and/or a third party; and

(2)   that the defendant in question knew of this contract expectancy, prospective business relationship, or contract; and

(3)   that the defendant in question used improper methods to interfere with the contract expectancy, prospective business relationship, or contract; and

(4)   that the defendant in question intended to interfere with the contract expectancy, prospective business relationship, or contract; and

(5)   that it was reasonably certain that the business relationship would have continued or the expectancy would have been realized in the absence of the defendants' conduct; and

(6)   that QueTel was damaged by the disruption of the contract expectancy, business relationship or contract.

You shall find your verdict for the defendant if the plaintiff failed to prove any one or more of these elements; or if you find that the defendant proved by the greater weight of the evidence that the interference was justified, privileged or not improper.

**INSTRUCTION P**
**Tortious Interference Defined**

"Tortious interference" means only that the interference was intentional and improper under the circumstances, not that the "improper methods" used were inherently illegal or tortious.  Methods of interference considered improper are those means that are illegal or independently tortious, such as violations of statutes, regulations, or recognized common-law rules.  Improper methods may include, among other things, fraud, misrepresentation or deceit, misuse of inside or confidential information, or breach of a fiduciary relationship.  Methods also may be improper because they violate an established standard of a trade or profession, or involve unethical conduct.

**INSTRUCTION Q**
**Tortious Interference with Contract and Business Expectancy: Damages**

If you find that finalcover and/or Mr. Abbas tortiously interfered with QueTel's contract expectancies, prospective business relationships or contracts, then QueTel is entitled to damages in the amount of the present value of lost profits resulting from the defendant's actions.  In order to recover lost profits, QueTel is not required to prove the amount of its damages with mathematical precision; rather, it was only required to produce sufficient facts and circumstances that would permit a trier of fact to make an intelligent and reasonable estimate of the amount.

**INSTRUCTION R**
**Conversion: Elements**

QueTel has also alleged that Defendants committed the tort of conversion. In order to prove that one or more Defendants converted QueTel's property, QueTel must show that one or more Defendants wrongfully exercised control or assumed authority over property belonging to QueTel.  If QueTel demonstrates that by a preponderance of the evidence, your verdict should be for QueTel on its claim of conversion.

QueTel is entitled to recover damages for converted property irrespective of whether the Defendants acted in good or bad faith, with care or negligence, or with knowledge or from ignorance, in converting the property.

**INSTRUCTION S**
**Conversion: Damages**

If you find for QueTel on its claim of conversion, QueTel is entitled to a damages award in an amount equal to the fair market value of the property converted as of approximately April 24, 2014, the date of Mr. Abbas's resignation from QueTel. You may consider evidence of value a reasonable time prior and subsequent to the conversion in determining an award of damages for conversion.   QueTel is not required to prove the amount of its damages with mathematical precision; rather, it was only required to produce sufficient facts and circumstances that would permit a trier of fact to make an intelligent and reasonable estimate of the amount.

**INSTRUCTION T**
**Business Conspiracy: Damages**

If you find that two or more Defendants engaged in a conspiracy as described above, QueTel is entitled to recover damages resulting from Defendants' conspiracy, including, but not limited to, its lost profits. QueTel is not required to prove the amount of its damages with mathematical precision; rather, it was only required to produce sufficient facts and circumstances that would permit a trier of fact to make an intelligent and reasonable estimate of the amount.

**INSTRUCTION U**
**Finding Instructions on Destruction of Evidence**

You are to take, as established, the following findings of fact made by the Court prior to trial:

(12)     Defendants received a Cease and Desist letter from counsel for QueTel on May 16, 2016.

(13)     That Cease and Desist Letter informed Defendants of the general basis for QueTel's claims in this litigation, and requested that Defendants preserve all evidence, including any computers used to develop their CaseGuard software.

(14)     As of May 16, 2016, Defendants were on notice of potential litigation and had a duty to preserve the computer or computers used to develop CaseGuard and information relating to the development of CaseGuard.

(15)     After receipt of the Cease and Desist Letter, Defendants destroyed a computer on which Mr. Abbas developed the source code for CaseGuard by erasing all data on its hard drive and then placing it in a commercial garbage receptacle.

(16)     By doing so, the Defendants failed to take reasonable steps to preserve it, and the information on that computer cannot be restored or replaced through additional discovery.

(17)     Furthermore, in July 2017, Defendants uninstalled what has been referred to in this litigation as a "source code control system" from a subsequent computer used by Mr. Abbas to develop CaseGuard's source code.

(18)     This deletion of the source code control system occurred just days before the defendants had the forensic image of the hard drives prepared for production to the plaintiff and was long after the issue of whether a source code control system had been used by the defendants in the development of CaseGuard had been raised during discovery.

(19)      Also in July 2017, Defendants deleted thousands of CaseGuard-related files from the replacement computer, prior to turning over a forensic image of that device.

(20)      QueTel has been prejudiced by defendants' failure to preserve the computer, source code control system and thousands of CaseGuard-related files.

(21)      Defendants' destruction of the computer, source code control system and thousands of CaseGuard-related files was intentional.

(22)      Furthermore, Defendants failed to comply with an Order of this Court when they failed to image several computers used in the development of CaseGuard, and turn over such forensic images to QueTel for examination during discovery in this matter.

Based on the above, you are instructed as follows:

(4)      You must presume that the information on the computer used to develop CaseGuard that was destroyed by the defendants in late 2016 and the source code control system that had been on the replacement computer that was destroyed by the Defendants in July 2017 would have been unfavorable to the defendants when weighing the evidence in this case;

(5)      You may presume that the information contained in thousands of CaseGuard-related files that were deleted in July 2017 would have been unfavorable to the defendants when weighing the evidence in this case; and

(6)      You may take into consideration the fact that Defendants failed to comply with a Court Order to provide plaintiff with information relevant to its claims and the plaintiff was not given access to all the computers used by the defendants in developing CaseGuard.