IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| QUETEL CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:17-cv-471 (AJT/JFA) |
| ) | |
| HISHAM ABBAS *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OF DECISION AND ORDER

On April 19, 2017, Plaintiff QueTel Corporation ("QueTel") initiated this action for copyright infringement and trade secrets misappropriation against Defendant finalcover, LLC ("Finalcover")[1] and its two owners, Defendants Hisham Abbas ("Abbas") and Shorouk Mansour ("Mansour").[2]

On January 19, 2018, the Court entered as a discovery sanction judgment against all Defendants as to liability on Counts I for copyright infringement of QueTel's registered copyright in "TraQ Suite 6" software and on Count II for misappropriation of trade secrets pertaining to that software. [Doc. No. 109]. On January 22, 2018, the Court held a bench trial as to damages and other requested relief. After trial, the parties submitted proposed findings of fact and conclusions of law and the Court heard closing arguments on April 18, 2018.

---

[1] While Defendant finalcover, LLC is spelled with an initial non-capitalized "f", the Court will refer to it as Finalcover, with a capitalized "F."
[2] The eight count Complaint asserts the following claims: (1) copyright infringement (Count I): (2) misappropriation of trade secrets under the Virginia Uniform Trade Secrets Act, Va. Code § 59.1-336 *et seq.* ("VUTSA") (Count II); (3) violation of the Virginia Computer Crimes Act (Count III); (4) breach of duty of loyalty (Count IV); (5) breach of contract (Count V); (6) tortious interference with contract and business expectancies (Count VI); (7) conversion (Count VII); and (8) business conspiracy (Count VIII). At the beginning of the trial on January 22, 2018, the Court granted with conditions QueTel's Motion for Voluntary Dismissal [Doc. No. 113] with respect to Counts III through VIII and the case proceeded to trial with respect to Counts I and II. [Doc. No. 122].

1

Based on the Court's assessment of the evidence presented, and its order dated January 19, 2018, entering a judgment of liability as to Counts I and II of the Complaint, the Court awards statutory damages under the Copyright Act in the amount of $5,000 and an injunction with respect to Defendants' continued use, marketing, and sale of Finalcover's CaseGuard software. In support of this verdict, the Court issues the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).[3]

## FINDINGS OF FACTS AND CONCLUSIONS OF LAW

### I. Findings of Fact [4]

Based on all the evidence presented at trial, including the Court's assessment of the credibility of witnesses and the weight to be given each piece of evidence, the Court finds as follows:

**Liability**

1. The findings of fact set forth in the Court's Order dated January 19, 2018 [Doc. No. 109] is incorporated herein by reference.

2. Plaintiff QueTel is a software development company that has developed a portfolio of "web-based" asset tracking and evidence management software programs for use by law enforcement agencies. These software programs, known as "Modules," allow law enforcement entities to manage, among other things, physical, digital, and documentary evidence, track impounded vehicles and lab requests, as well as apparel, equipment, and other assets issued to employees. Each Module is connected to one core source code, referred

---

[3] Federal Rule of Civil Procedure 52(a) provides: "In an action tried on the facts without a jury . . . the court must find the facts specially and state its conclusions of law separately. The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court."

[4] Included as findings of fact are those facts recited in the Conclusions of Law as well as the Findings of Fact.

to as the "Core Engine." These Modules, together with the Core Engine and a user interface, known as a GUI, are collectively referred to as the "TraQ Suite" software, with the current version of that software known as "TraQ Suite 6."[5] Plaintiff's President and Chief Executive Officer ("CEO") is James Cleaveland.

3. QueTel sold its first Module using the TraQ Suite 6 on or about June 28, 2010 and registered its copyright in the TraQ Suite 6 source code on or about March 21, 2016 with the United States Copyright Office.

4. In June, 2007, QueTel hired Defendant Abbas; and in June, 2013, Abbas became the lead software engineer at QueTel, a position he held until he resigned from QueTel on April 24, 2014. While employed by QueTel, Abbas and another employee were responsible for developing QueTel's first generation browser applications incorporated into the Modules for the TraQ Suite. As an employee and lead developer at QueTel, Abbas had access to and obtained detailed knowledge of the Core Engine for the TraQ Suite, as well as the code for all of the then existing Modules of TraQ Suite 6.

5. In 2011, Abbas executed an Employment Agreement which, among other things, prohibited him from competing with QueTel in the sale or licensing of any products or services developed or marketed by QueTel, either during the period of employment with QueTel or for the two years immediately following the termination of his employment.

6. Finalcover was established in January, 2014 by Abbas and Defendant Mansour, his wife, for the purpose of providing web-development consulting services by Mansour to QueTel while Abbas was still employment by QueTel. Abbas is the CEO of Finalcover and owns 49% of

---

[5] In its Complaint, Plaintiff alleges that the following Modules are part of the TraQSuite 6 software: (1) Evidence TraQ; (2) Digital TraQ; (3) Lab TraQ; (4) Document TraQ; (5) Mobile TraQ;(6) Cam TraQ; (7) Training TraQ; (8) Quartermaster TraQ; (9) Impound TraQ; and (10) Asset TraQ. See Compl. [Doc. No. 1] at ¶¶ 20-21.

3

the company. Mansour owns 51% of Finalcover. In 2014, QueTel paid Finalcover a total of $19,000 for services provided both before and after Abbas' resignation from QueTel.

7. In approximately May, 2014, approximately six weeks after resigning from QueTel, Abbas began developing Finalcover's web-based evidence management software suite known as "CaseGuard." Like TraQ Suite 6, Case Guard software is a web-based asset tracking and evidence management software whose applications can be accessed and utilized only through a browser that connects to the internet; and in approximately January, 2015, Defendants created the necessary website (with a registered domain name) for the purposes of operating and marketing CaseGuard software to customers.

8. There are substantial functional and structural similarities between the TraQ Suite 6 and the CaseGuard software. Both use a "core engine" with function specific applications, which are "built on top" of the core engine and could not function without the core engine of the TraQ Suite 6 or CaseGuard software. In addition, both TraQ Suite 6 and CaseGuard software have incorporated certain "open source" or commercially available software applications or "libraries," such as Telerik and certain Microsoft products, as well files with standard or common names within the software industry. They also have differences, such as certain different commercially available software technologies, or different versions of the same technologies, including different "libraries."

9. In approximately July, 2015, QueTel added to its TraQ Suite 6 Modules a software program to redact body worn camera videos through a product known as TraQ Studio. TraQ Studio is a redaction software solution that allows the blurring or removal of images from a body camera or other video generated images. Before the development of TraQ Studio, TraQ Suite software did not include the redaction software used for TraQ Studio. Like other Modules,

TraQ Studio runs off the core engine of the TraQ Suite 6 software and is therefore a web-based application.

10. Abbas had terminated his employment with QueTel before QueTel began the development of TraQ Studio. He was not involved with or otherwise exposed to its software development and has not had access to any redaction software code developed for TraQ Studio.

11. Finalcover has also developed a video redaction software product known as CaseGuard Studio, which at trial became a principle focus for the purposes of determining the scope of relief with respect to the judgment of liability that had been entered as to Counts I and II.

12. Unlike TraQ Studio, CaseGuard Studio is a desk-top software application, not a web-based application. It operates off of a core engine and a "business logic" that is different than and separate from the core engine and business logic in CaseGuard software that supports the other "solutions" marketed as part of the CaseGuard Evidence Management system. Nevertheless, it can "communicate" or be "integrated" into the CaseGuard Evidence Management system that has CaseGuard software as its core engine through a commercially available product called a Web API. CaseGuard Studio can therefore operate either in conjunction with the CaseGuard Evidence Management system or as a stand-alone product;[6] and Finalcover has sold CaseGuard Studio as a stand-alone desk-top system.

13. Finalcover's line of products within its CaseGuard software suite competes with QueTel's TraQ Suite 6 line of products; and Finalcover's CaseGuard Studio competes with QueTel's TraQ Studio.[7]

---

[6] At trial, there was conflicting expert testimony concerning, *inter alia,* whether CaseGuard Studio was "web-based" or a desk-top application and whether CaseGuard Studio can operate independently of the web-based CaseGuard software that serves as the core engine for the CaseGuard Evidence Management system. Based on the Court's assessment of that testimony, the Court finds as stated above.

[7] Those competing products are the following:
    a) Finalcover's EvidenceGuard, which assists in the management of physical evidence, competes with QueTel's Evidence.

14. Finalcover spent most of 2014 and all of 2015 developing its products; and in 2016 it made its first sale of any CaseGuard product after the Maricopa County Arizona Sherriff's Department had solicited Finalcover in late 2015 to provide substitute products for QueTel products that the Sherriff's Department had previously purchased; and Finalcover sold to that Sherriff's Department its CaseGuard Studio to replace TraQ Studio.

15. After QueTel learned that Finalcover had made a sale of a CaseGuard product to the Maricopa County Arizona Sheriff's office, QueTel, by letter dated May 16, 2016, sent through counsel a "Cease and Desist Demand" to Defendants, claiming that Defendants had copied the TraQ Suite 6 code and that its CaseGuard software infringes on QueTel's copyrighted TraQ Suite 6 and its source code.[8] QueTel demanded that the Defendants cease their unlawful actions, including the use of the source code for TraQ Suite 6 and any advertising, promotion or sale of the CaseGuard software, provide a complete accounting of all CaseGuard software, and preserve all evidence pertaining to the development of the CaseGuard software. It also listed Modules (described as "software solutions") that constitute components of the TraQ Suite 6. TraQ Studio is not referenced in that listing.

16. On May 17, 2016, in a detailed response, Finalcover, through counsel, disputed that it had engaged in any improper conduct or infringement. Briefly summarized, Finalcover claimed

---

b) Finalcover's DigitalGuard, which assists in the management of digital evidence, competes with QueTel's Digital TraQ.
c) Finalcover's MobileGuard, which is a mobile application for evidence management solutions, competes with QueTel's Mobile TraQ.
d) Finalcover's WearableGuard, which assists in the uploading of data from body-worn cameras to a law enforcement agency's cloud storage, competes with QueTel's MegaUploader.
e) Finalcover's AssetGuard, which tracks law enforcement supplies and equipment, competes with QueTel's Asset TraQ and Quartermaster TraQ.
f) Finalcover's LabGuard, which tracks law enforcement requests to a laboratory for tests, and the results of those tests, competes, or at one time competed, with QueTel's Lab TraQ.
g) Finalcover's CaseGuard Studio competes with QueTel's TraQ Studio.

[8] QueTel's Cease and Desist letter dated May 16, 2016, did not name CaseGuard Studio but QueTel stated that it had learned that the customer "has replaced one of the TraQ Suite 6 applications with a corresponding CaseGuard application."

6

that its CaseGuard software, like the TraQ Suite 6 software, was a derivative product of an "open- source platform" and that by claiming infringement by Finalcover, QueTel was itself violating the terms and conditions that applied to its use of this open source platform. CaseGuard also detailed how its software is distinct from TraQ Suite 6 "in all material ways." It refused to comply with any of QueTel's demands but invited QueTel to discuss further their respective positions. There is no evidence that QueTel responded to this letter or otherwise contested Finalcover's contentions before filing this action nearly a year later.

17. In early 2017, the Spokane Washington Sherriff's Department announced a request for proposals for a digital evidence management system.

18. On April 19, 2017, QueTel filed this action in which it alleged, *inter alia*, copyright infringement in violation of the Copyright Act, 17 U.S.C. 101 *et seq.*, (Count I) and the misappropriation of its trade secrets in violation of the Virginia Uniform Trade Secrets Act, Va. Code, Section 59.1-336 *et seq.* (Count II). Plaintiff's core contention is that the source code for TraQ Suite 6 and CaseGuard is substantially the same, as evidenced by a screenshot Defendant Abbas inadvertently transmitted to a QueTel employee in July, 2014; and that Defendants' CaseGuard software (and those CaseGuard products that shared that software's core engine) was copied or derived from the TraQ Suite 6 source code and therefore infringed on QueTel's registered copyright in the TraQ Suite 6.

19. In mid-2017, both QueTel and Finalcover, together with several other companies, responded to the request for proposals from the Spokane Washington Sherriff's Department. QueTel submitted a proposed five-year contract at a total cost of approximately $329,000, from which it expected to realize a profit of approximately $246,000. Finalcover submitted a proposed five-year contract at a total cost of $137,380.

20. Although no final agreement had been entered into at the time of trial, the Spokane Washington Sherriff's Department has announced that it has selected Finalcover for a contract award, which is expected to be for the total amount of $100,587.50 over three years, paid in 12 quarterly year payments. Approximately $17,000 of the expected contract award is attributed to CaseGuard Studio, approximately $20,000 for other CaseGuard products, approximately a third of the contract amount for "cloud storage," and the balance for training, travel, and installation.

21. The evidence is insufficient to establish that the Spokane Washington Sherriff's Department would have accepted QueTel's proposed contract or otherwise selected QueTel's TraQ Suite 6 products had Finalcover not competed.

22. By Order dated January 19, 2018 [Doc. No. 109], as a discovery sanction, the Court entered judgment against all Defendants as to liability on Count I, alleging copyright infringement of the TraQ Suite 6 registered copyright, and Count II, alleging misappropriation of QueTel's trade secrets as to that copyrighted software. In that regard, the Court found that the Defendants has spoliated evidence by disposing of the computer and its hard drive that Defendants used to develop its CaseGuard software, otherwise deleted files, and, most importantly, removed and disposed of the source code control system that Defendants had installed and used for some period of time during the period it was developing its CaseGuard software. QueTel had received a "screenshot" from Abbas in July, 2014, on the basis of which QueTel believed that Abbas had stolen the TraQ Suite 6 source code; and QueTel contended that by disposing of the source code control system, it had been deprived of the ability to conduct a "line by line comparison" between TraQ Suite 6 and the CaseGuard software during the "critical period" of CaseGuard software's development in 2014. The

Court concluded that by virtue of Defendants' conduct, Plaintiff had been effectively deprived of the opportunity to establish that Defendants had copied the TraQ Suite 6 software or that the CaseGuard software was otherwise improperly derived from it.

23. The Court's January 19, 2018 Order, entering a judgment of liability on Counts I and II, did not consider or decide whether CaseGuard Studio infringed QueTel's TraQ Suite 6 software or misappropriated its trade secrets. TraQ Studio did not exist and the TraQ Suite 6 source code did not include TraQ Studio's redaction functionality in July, 2014, when QueTel received the "screenshot" from Abbas (or anytime before some time in 2015). Abbas had never been exposed to QueTel's redaction software while an employee of QueTel; and in its Complaint, QueTel does not reference CaseGuard Studio or list TraQ Studio among the Modules whose Core Engine is infringed or whose trade secrets are misappropriated through the CaseGuard software. CaseGuard Studio and TraQ Studio were not the subject of any expert reports prepared and exchanged before the Court's sanctions order, and were not significantly discussed or referenced at the hearings that led to the Magistrate Judge's Report and Recommendation or the Court's January 19, 2018 Order. Defendants' conduct that resulted in the Court's sanctions order did not materially affect the Plaintiff's ability to compare for the purposes of determining infringement either the TraQ Suite 6 source code or the TraQ Studio source code with the source code for CaseGuard Studio. Likewise, that conduct did not materially affect Plaintiff's ability to compare the source code for CaseGuard software with the source code for CaseGuard Studio for the purpose of determining whether the redaction software incorporated into CaseGuard Studio derived from the infringing CaseGuard software, which never had the redaction functionality of CaseGuard Studio or TraQ Studio.

24. The evidence is insufficient to establish that CaseGuard Studio infringes TraQ Suite 6 software, misappropriates QueTel's trade secrets or is copied or is otherwise derived from CaseGuard software, the TraQ Suite 6 software, or the TraQ Studio software.

25. Overall, Finalcover has sold its CaseGuard software products to four customers, all in 2017 or later (DigitalGuard to one customer in September, 2017, WearableGuard to one customer in September, 2017, and EvidenceGuard to two customers) and its CaseGuard Studio to between 25-30 clients. The only sale by Finalcover to an existing or former QueTel customer is its sale of CaseGuard Studio to the Maricopa County Sherriff's Department in 2016, and only after it was first contacted by that customer following its dissatisfaction with TraQ Studio, which it had previously purchased from QueTel.

26. During 2014 – 2017, Finalcover had sales of CaseGuard products in the total amount of $115,715.79, $49,171.50 of which is attributed to the sale of Finalcover's CaseGuard software (that is, those products other than CaseGuard Studio), all of which took place in 2017. During this same period, Finalcover's expenses exceeded its revenue obtained from the sale of CaseGuard software.[9]

27. Finalcover's expenses pertaining to the development and marketing of CaseGuard software has exceeded its gross revenue generated by that software and it therefore has not realized any profits from the sale of any competing and infringing CaseGuard software products.

28. Plaintiff has not established that it would have made any lost sales in the absence of any conduct on the part of the Defendants.

---

[9] Finalcover's 2014 tax return shows total business expenses of $52,933 against $19,000 in revenue attributed to consulting services to QueTel; and its 2016 tax return shows total expenses of $60,331, with no business revenue. No tax returns for 2017 are in evidence; but there is in evidence that during 2017, in addition to the other types of business expenses incurred in 2016, Finalcover also employed an employee at a cost of approximately $50,000.

29. Notwithstanding its litigation related conduct that led to the Court's January 19, 2018 sanctions Order, the evidence is insufficient to establish that Defendants willfully and maliciously infringed Plaintiff's copyright in TraQ Suite 6 software or that Finalcover's limited sales of CaseGuard software was done with the intention of either willfully or maliciously damaging QueTel. In that regard, Finalcover engaged in a prolonged period of product development after July, 2014 with respect to its CaseGuard software before its first sale of that software in 2017, after Abbas' non-competition period had ended; its CaseGuard Studio is demonstrably different (and reasonably thought by Finalcover to be different) than TraQ Suite 6 software, TraQ Studio, or CaseGuard software; its products incorporate large elements of open source libraries; it has not sold any CaseGuard software to any former or existing QueTel customer; and there is no evidence that Defendants have engaged in any product disparagement with any existing or potential QueTel customers. In response to Plaintiff's Cease and Desist letter of March 16, 2016, Defendants denied any improper conduct, explained the basis for its position, refused to comply with QueTel's requests on the basis of that explanation, and invited QueTel to discuss their respective positions further, without any evidence that QueTel continued to challenge those positions before it filed suit. The evidence is also insufficient to establish that Defendants engaged in misconduct or acted with actual malice or such recklessness or negligence as to evince a conscious disregard of QueTel's rights.

30. QueTel has suffered the loss of tangible and exclusive rights as a result of the marketing and sale of Finalcover's CaseGuard software and CaseGuard Evidence Management products dependent upon CaseGuard software.

31. The Defendants' continued use, marketing, and sale of CaseGuard software threatens QueTel with irreparable harm, for which monetary damages would be inadequate, and the balance of equities and the public interest weigh in favor of granting a permanent injunction.

## II.    Conclusions of Law

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331, 1338(a) and 1367(a). It also has personal jurisdiction over the Defendants; and venue is proper in this District pursuant to 28 U.S.C. §§1391(b) and 1400(a).

2. As set forth in its Order dated January 19, 2018, Defendants are liable for copyright infringement and the misappropriation of trade secrets with respect to the TraQ Suite 6 source code through the use, marketing, and sale of its CaseGuard software.

3. Plaintiff had the burden at trial of establishing that CaseGuard Studio was within the scope of the liability entered against Defendants for infringement and misappropriation of its TraQ Suite 6 source code and that it was therefore entitled to damages and injunctive relief with respect to Finalcover's CaseGuard Studio.

4. Plaintiff has failed to establish that the use, marketing, or sale of CaseGuard Studio infringes TraQ Suite 6 and therefore violates the Copyright Act or misappropriates trade secrets pertaining to TraQ Suite 6 and therefore violates the Virginia Uniform Trade Secrets Act.

5. Plaintiff has failed to establish that it has suffered any actual damages as a result of Defendants' misappropriation or infringement of TraQ Suite 6, its intangible rights and injuries can be adequately addressed through injunctive relief, and the evidence is otherwise insufficient to award, either as actual damages under the Copyright Act or unjust enrichment damages under the Virginia Uniform Trade Secrets Act, Plaintiff's development costs associated with its development of TraQ Suite 6.

6. Defendants have not established that they are entitled to recover any profits pursuant to 17 U.S.C. § 504(b).

7. Plaintiff's profit on any contract with the Spokane Washington Sherriff's Department is speculative; and Plaintiff is therefore not entitled to recover its estimated profit on any unrealized contract with that agency.

8. Based on all the facts and circumstances, the Court awards statutory damages under the Copyright Act in the total amount of $5,000.

9. Plaintiff is not entitled to recover punitive damages.

10. Plaintiff is entitled to an injunction against the use, sale or marketing of the CaseGuard software, but not CaseGuard Studio.[10]

11. QueTel is not entitled to recover costs and attorney's fees under the Virginia Uniform Trade Secrets Act, Va. Code § 59.1-338.1, which permits recovery of attorney's fees to the prevailing party "[i]f the court determines that . . . willful and malicious misappropriation exists."

12. The Court will determine upon motion whether, and if so, in what amount, the Court should award in its discretion attorney's fees and costs to the prevailing parties pursuant to the Copyright Act, which provides that a "court in its discretion may allow the recovery of full costs by or against any party . . . [and] may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505.

---

[10] As discussed above, Plaintiff contends that CaseGuard Studio cannot operate separate and apart from CaseGuard software. Although the Court has found otherwise, the Court's injunction effectively prevents CaseGuard Studio from operating through the use of the web-based CaseGuard software and permits its marketing and sale only as a stand-alone product that is not "integrated" into Finalcover's web-based CaseGuard Evidence Management System.

### III. Conclusion

For these reasons, the Court issues its verdict in favor of the Plaintiff and against the Defendants and in accordance with that verdict, it is

ORDERED that judgment be, and the same hereby is, entered against Defendants, jointly and severally, in the amount of $5,000 as statutory damages; and it is further

ORDERED that Defendants, their officers, agents, servants, employees, and attorneys, and all those other persons who are in active concert or participation with any of them, be, and the same hereby are, permanently ENJOINED from infringing Plaintiff's TraQ 6 Suite software, Copyright Registration No. TX-8-167-420, and from misappropriating its trade secrets in the code for that software, or otherwise violating Plaintiff's exclusive rights to TraQ 6 Suite software, including, but not limited to, manufacturing, selling, copying, installing, servicing, supporting, maintaining, and reproducing CaseGuard software. This injunction extends explicitly, but not exclusively, to the source code for EvidenceGuard, DigitalGuard, MobileGuard, WearableGuard, and AssetGuard, but not CaseGuard Studio; and it is further

ORDERED that the parties file any motion for attorney's fees and costs within 14 days, together with supporting documentation and briefing. Plaintiff is directed to break out separately in any application those fees and costs sought with respect to (1) obtaining the Court's Order dated January 19, 2018; (2) trial and the preparation for trial as to Counts I and II; and (3) all other tasks. Oppositions and Plaintiff's reply shall be filed in accordance with the applicable rules. In its opposition, Defendants should detail the costs and expenses they have incurred with respect to Counts III-VII.

The Clerk is directed to forward a copy of this Memorandum of Decision and Order to counsel of record and to enter judgment in accordance therewith pursuant to Fed. R. Civ. P. 58.

/s/
Anthony J. Trenga
United States District Judge

October 25, 2018
Alexandria, Virginia

15

The Clerk is directed to forward a copy of this Memorandum of Decision and Order to counsel of record and to enter judgment in accordance therewith pursuant to Fed. R. Civ. P. 58.

/s/
Anthony J. Trenga
United States District Judge

October 25, 2018
Alexandria, Virginia